THOMAS PHILLIPS v. FERDINAND POTTER and another.

Although a party to a bond is estopped at law from showing a want of consideration, or a different consideration from that actually recited in the instrument, or *fraud*, even, in any matter collateral to the consideration, yet while the obligation remains executory, a party thereto, sued upon the bond, may specially plead that it was procured from him by fraud, covin, and misrepresentation of the plaintiff, setting forth the particulars thereof, and showing that it reaches the substance of the consideration; and there is no form of practice or technical rule of law adopted or acted upon in Rhode Island, which estops a defendant from availing himself of such a defence, where, at least, it is evident that it will work no injustice to the plaintiff.

DEBT on bond in the penal sum of eight thousand dollars; the declaration reciting the condition of the bond to be, in substance,

---

that whereas, the plaintiff had transferred to the defendant certain personal property mortgaged to the plaintiff by John and Thomas Hope, and in part payment therefor the defendant had agreed to pay at maturity to the holders thereof, three several promissory notes made by the said John and Thomas Hope, payable to the plaintiff and by him endorsed, amounting, in the aggregate, to the sum of four thousand dollars, and had also agreed to pay to the plaintiff the sum of fifteen hundred dollars, with interest, in six months from the date of said bond, and the sum of five hundred dollars, with interest, in two years from the date thereof, the condition of the bond was, that if the defendant should pay the notes endorsed by the plaintiff at maturity, and deliver the same to him, and should also pay the said sums of fifteen hundred dollars and five hundred dollars, with interest at the times in said bond mentioned, then the bond was to be void, &c. The declaration assigned the breaches to be, *first*, that the defendant had not delivered to the plaintiff, though requested, one of the endorsed notes, amounting to the sum of twenty-five hundred dollars, and, *second*, that he had not paid the sum of fifteen hundred dollars to the plaintiff, or any part thereof, though the time limited for the payment thereof in said bond had long passed.

To the breach by non-payment of the fifteen hundred dollars, the *third* and *fourth* pleas averred, in substance, that the bond was procured by fraud, covin and misrepresentation of the plaintiff: that before the making of said writing obligatory, to wit, on the 20th day of July, 1860, certain persons, to wit, John and Thomas Hope, by their mortgage deed of that date, conveyed to the plaintiff certain personal property belonging to them, upon the condition that if the said Hopes should well and truly pay, or cause to be paid, all such sums of money as might be due and owing from them to the plaintiff at the time when the same should be payable, and should indemnify and save harmless the plaintiff from all loss, cost, damage or expense by reason of any promises, endorsements, guaranty, acceptances or liability which he had theretofore made or assumed, or which he might, at any time within five years from the date of said deed, make, assume, or enter into, that then said mortgage should be void; that the

plaintiff was empowered in said mortgage deed to sell said mortgaged property at public auction or private sale, upon any breach of the conditions of said mortgage, and, in pursuance of said power, on the 6th day of April, 1861, sold the said mortgaged property to the defendants, on the terms, that the defendants were to pay to the plaintiff all such sums secured by said mortgage as were due and owing by the Hopes to him, and also all such sums as should indemnify the plaintiff from all loss, costs, damage or expense, by reason of any promises, endorsements, guaranty, acceptances or liability made, assumed or entered into by the plaintiff, under said mortgage, or secured by the same,—the entire amount to be paid by the defendants not to exceed twelve thousand dollars ; that the defendant then and there falsely, fraudulently and deceitfully stated and represented to the defendants that a certain promissory note for the sum of two thousand dollars, then in his possession, and signed by John and Thomas Hope, was a good and valid note, given for money and other valuable consideration advanced by the plaintiff to said Hopes, and that the same was a valid claim against said Hopes under said mortgage, in addition to or independent of the amount of all loss, cost, damage or expense incurred by the plaintiff by reason of any promise, endorsement, guaranty, acceptances or liability made or entered into by the plaintiff under said mortgage ; that said note was not, in fact, given by said Hopes to the plaintiff for money or any valuable consideration whatever, but the same was without consideration and void, or, at best, given by said Hopes only as collateral security for the payment, by said Hopes, of the sums for which the plaintiff had become liable for them as endorser or guarantor, under said mortgage ; and that confiding in the said representations and statements of the plaintiff they promised and agreed to pay to the plaintiff the amount of said note of two thousand dollars,—the first payment, of fifteen hundred dollars, to be made in six months, and the second payment, of five hundred dollars, to be made in two years, from the date of said bond,—which said sum of fifteen hundred dollars is the sum, the non-payment of which, by the said defendants, is the alleged breach of the condition of said bond secondly assigned by the plaintiff, in his declaration ; that confiding in said repre-

sentations and statements of the plaintiff and deceived thereby, the defendants executed said bond, with the condition thereto annexed to pay said sum of fifteen hundred dollars, &c. To these pleas the plaintiff replied, that the defendants were estopped by their bond from setting up such a defence, to which replication the defendant demurred generally, and the plaintiff joined in the demurrer.

*B. N. Lapham, with whom was R. W. Greene, for the defendant,* contended, that contrary to the course of decision in New York, fraud in the consideration had always been in this State a good defence at law to a sealed instrument; and that it was never necessary to go into a court of equity here for redress·in such a case, and that such was the modern and more convenient prac-. tice. 2 Parsons on Contracts, 280, and note.

*Eames, for the plaintiff :*—

I. A recital in an instrument under seal is conclusive as against the party by whom it is made, and in the course of the transactions in which it is given. 2 Smith's Lead. Cases, 579. "If a condition in a bond recites that there are divers suits in B. R. the obligor is estopped to say, that there are no suits there." Com. Dig. 198, Estoppel, (A 2); Cro. Eliz. 756, and cases cited; 2 Adolph. & Ellis, (278,) 29 Eng. Com. Law, 96; *Carpenter* v. *Buller*, 8 M. & W. 211, per Parke, B.; *Root* v. *Crock*, 7 Barr, 378; *Mann* v. *Eckford's executors*, 15 Wend. 502; *Jackson* v. *Brooks*, 8 Ib. 426; *Francis* v. *Boston Mill Corp.* 4 Pick 368; *Stebbins* v. *Smith*, 4 Ib. 97; *Becket* v. *Bradley*, 7 M. & G. 994; 3 J. J. Marsh, 166; 4 Ib. 655; *Carver* v. *Jackson*, 4 Peters, 87; *Jackson* v. *Parkhurst et al.* 9 Wend. 209. "Recitals in deeds of real estate are evidences against the party making them, or any person claiming under him; they estop parties and privies, privies in blood, in estate, and in land," citing 1 Ph. Ev. 411, ch. 8, 2; Com. Dig. Evidence, B 5; 1 Salk. 285; 2 P. Wms. 432; Willes, 11; 1 Dallas, 67; 4 Binney, 231 and 314; *Torrey* v. *Bank of Orleans*, 9 Paige Ch. R. 658–9. "A recital of a fact in a deed is as against the grantee in such deed and all claiming under him through that deed, evidence of the fact recited therein; so as to save the necessity of further proof thereof by the grantor ·or those who claim under him.

The acceptance of the deed operates as an estoppel upon the grantee and those who claim under him, as against the grantor and his assigns and representatives." *President, &c.* v. *Risley*, 4 Denio. 486; "The general rule is well settled, that recitals in a deed estop parties and privies in estate." *Cutler* v. *Dickinson*, 8 Pick. 387. The sureties in an administration bond were held to be estopped by a recital that their principal had been duly appointed from denying the validity of his appointment. *Demeyer* v. *Legg*, 18 Barb. 20, referring to 8 Cowen, 586. "The Cutler case recognizes the principle that a man who admits the existence of a fact or deed, either by reciting it in an instrument executed by him, or by acting under such instrument, shall not be received to deny its existence." *Goodtitle* v. *Bailey*, Cowper, 601. "No man," says Lord Mansfield, "shall be allowed to dispute his own solemn deed." *Lainson* v. *Tremere*, 1 Ad. & Ell. 792. Action on bond for £170; plea, judg. for £140; defendant held estopped. 2 Smith's Lead. Cases, 535, 536; Ph. Ev. C. & H. notes 1430–1460.

II. No fraud whatever can be set up in a court of law to affect the operation of a sealed instrument, save such as relates to *the execution.* Phillips on Ev. C. & H. notes, part 2, 615, n. 306; *Vrooman* v. *Phelps*, 2 Johns. 177; *Dorlan* v. *Sammis*, 2 Ib. 179, n.; *Dorr* v. *Munsell*, 13 Ib. 430; *Parker* v. *Parmele*, 20 Ib. 130; *Dale* v. *Roosevelt*, 9 Cow. 309; 5 Ib. 506, 509; *Case* v. *Boughton*, 11 Wend. 106; *Johnson* v. *Miln*, 14 Ib. 198; *Ousterhout* v. *Shoemaker et al.* 3 Hill. 513. "It is well settled that a deed cannot be avoided for fraud in the consideration." "The fraud must go to the execution." *Taylor* v. *King*, 6 Munf. 358; *Wyche* v. *Macklin*, 2 Rand. 426; *Stubbs* v. *King*, 14 S. & R. 208; *Stoever* v. *Weir*, 10 Ib. 25; also, 1 McCord, 515; 4 Munroe, 374; 5 J. J. Marsh, 141; 3 Ib. 292; 1 Devereux & Battle, (N. C. Ch.), 436; 1 Ala. 100; *Cullum* v. *Bank of Alabama*, 4 Ala. 21. "When the contract of sale has been executed by the purchaser's acceptance of a conveyance, fraud cannot be urged as a defence to an action at law, for the price agreed to be paid. A court of law cannot do complete justice between the parties by placing them *in statu quo.*" *Barrows et al.* v. *Alter et al.* 7 Missouri, 424. "Under a plea of fraud the

only evidence of fraud that can be received is that in relation to the execution of the instrument. Fraud in the consideration, or a partial or total failure of consideration, is no defence to an action at law. The seal itself imports a consideration." *Stevens* v. *Judson et al.* 4 Wend. 471 ; *Belden et al.* v. *Davies et al.* 2 Hall, 433 ; *Hartshorn et al.* v. *Day*, 19 How. Sup. Ct. 222 ; *Parker & Co.* v. *Paw. M. F. Ins. Co.*, 3 R. I. 192. No other rule of law can be found except in those states which have not full equity powers. 14 S. & R. 208. In this case justice requires that the rule should be strictly adhered to. The defendants have the property of the plaintiffs, on the faith of the bond, and ought, in law and justice, to be required to stand by the agreement recited in the bond, and to pay the price stipulated to be paid. 2 Smith's Lead. Cases, 568, refers to *Jackson* v. *Hotchkiss*, 6 Cow. 401. It is unjust to withdraw an express or implied admission to the injury of those who have acted upon it, by parting with rights which they would otherwise have retained. *Barber* v. *Harris*, 15 Wend. 615.

III. The defendants' pleas of fraud do not aver a return, or an offer to return the property, for the payment of which the bond was given. The party seeking to avoid a contract on the ground of fraud must restore that which he has received, so that the parties may be put *in statu quo.* The failure to make such restitution is a waiver of the fraud. *Moyer* v. *Shoemaker*, 5 Barb. 322 ; *Masson* v. *Bovet,* 1 Denio. 69 ; *Thayer* v. *Turner*, 8 Met. 550 ; *Wingate* v. *King*, 10 Shep. 35; *Shields* v. *Pettee*, 2 Sanf. 262 ; referred to in 2 Parsons on Contracts, 483 ; see also 1 Ib. 475 ; 2 Ib. 483 ; Sedgwick on Damages, 294 ; *Willett* v. *Freeman*, 3 J. J. Marsh, 292. The defendants should have averred in their pleas a return of, or an offer to return, the property for which the bond was given. By setting up fraud without such return or offer to return, the defendants seek to keep the property for which the bond was given, and to avoid the payment of the price recited in the bond to be paid therefor. The demurrer to the plaintiff's replication of estoppel should therefore be overruled.

BULLOCK, J. This is an action of *debt*, upon bond with condition. The breach assigned is the non-performance by the

defendants of their obligation to pay $1500 in six months from the date of the bond. The defendants, by their third and fourth pleas, aver that this obligation was procured by the fraud, covin and misrepresentation of the plaintiff, setting forth wherein the fraud, &c., consists. The plaintiff replies, that in this action the defendants are estopped from setting up this defence; to which replication they demur. The demurrer therefore raises the question of the sufficiency of the pleas and of the replication.

It is an admitted principle, that in general a party is estopped to deny that which he hath solemnly affirmed under seal. Exceptions to this general principle may be found, as well-established as the rule itself. Thus a trustee, after conveyance to his *cestui que trust*, is not estopped from setting up an older, and after acquired title; or a lessee, from denying the title of his lessor, after the relation has ceased, or after he has been evicted by a title paramount. There is another class of cases, admitted exceptions to the rule above stated, as when the deed is fraudulently read to an illiterate person; when a false deed is substituted for the real one; or, when from the imbecility of age, the weakness of disease, or like causes, the covenantor or obligor is not legally competent to contract. These cases proceed upon the acknowledged principle, that the instrument is *not* the deed of the party executing it; that it is a nullity; and that there is nothing by which he may be estopped. So when the consideration of a deed is *illegal*, the party claiming under it is not permitted to enforce it, either at law or in equity, because it contravenes good morals or sound policy. The question here is, whether, at common law, the case of actual fraud forms an exception to this general rule, that an obligor is estopped to deny his own sealed acknowledgment, as against the obligee; in other words, whether, when the party who has practiced a fraud, seeks to enforce his own fraudulent contract against the party upon whom the fraud has been practiced, the party wronged can plead the fraud in bar of the action, or is estopped because the contract is under seal. That one who has practiced fraud shall not derive any advantage from it, is a rule of the common law coeval with the law itself. In the earliest of the reports may be found adjudged cases where not only bills of sale of goods and chattels, but grants and feof-

ments of lands, and judgments of court are set aside upon this principle. Wood's Inst. 299, and cases there cited; 2 Roll. Abr. 23, 549; 3 Dyer, 294, a, 295, b; 6 Cro. Eliz. 86; Skin. 357, pl. 4. These cases were ruled upon the obvious doctrine that the practice of fraud, or covin, in the procuring of a contract, was against sound morals and good conscience, and courts of law uniformly refused to lend their aid to enforce such contracts. Of the various early acts of parliament relating to this subject, the purpose was to define a new remedy rather than to establish any new right. The leading statute of 13 Eliz. c 5, did not import any new rule into the common law. Its object was rather to declare what the common law was, and what it had been. Lord Coke, in two different references to this statute, says, "it appeareth," by its enacting clause, "what the law was, before the making of this act." Coke Lit. 290, title Release, 76, title Escuage. "All deceitful practices in defrauding another are condemned by the common law," and this "without the express provision of any act of parliament." 2 Bac. Abr. 594. Of the like opinion was Lord Mansfield, who, in *Cadogan* v. *Kennett*, Cowper, 434, says, "the rules and principles of the common law, as now universally known and understood, are so strong against fraud in every shape, that the common law would have attained every end proposed by the statutes"—13 Eliz. c 5, and 27 Eliz. c 4. Thus, whether the rule, that fraud in the *consideration* of a contract vitiates it, rests upon the common law, or upon the statute, in either case it is equally affirmed.

The question whether courts exercising common law, as contra-distinguished from equity jurisdiction, take cognizance of such cases when the contract is evidenced by a sealed instrument, is one upon which the authorities are not agreed. That a party who has been defrauded usually invokes the aid of a court of equity, there is no doubt, because its course of procedure is more direct, thorough and searching, its remedies often more effective; and because, also, it tends to limit the number of actions. These are some of the reasons assigned by Blackstone; who, so far from admitting that in cases of fraud the jurisdiction of a court of equity is *exclusive*, says, that every kind of fraud is

equally cognizable at law, and that some frauds are only cognizable there; 3 Bl. Com. 432, 37–39; and his views are supported by the case of *Bright, ex.,* v. *Eynon,* 1 Burr, 390, where the fraud went, it would seem, as well to the consideration as to the execution of a discharge, when Lord Mansfield distinctly laid down the principle, "that courts of equity and courts of law have a concurrent jurisdiction to suppress and relieve against fraud." See also *Cockshott,* v. *Bennett,* 2 T. R. 765. But the interposition of the former is often necessary, for the *better investigation* of truth, and to give more complete redress.

In *Hayne* v. *Maltby,* 3 T. R. 440, the question, whether fraud in the consideration of a sealed instrument, could be pleaded at law, in bar of the action, arose directly. The action was *covenant,* for using a patent otherwise than agreed. The plaintiff demurred to the pleas of the defendant, and assigned, for reasons, that the defendant was estopped by his covenant, to deny that the invention was new, or that the patentee was not the inventor. But the court, (Kenyon, C. J.,) without dissent, ruled that when a party falsely pretends to have certain exclusive rights, which, upon terms, he assigns to another, who, in consideration thereof enters into the covenant sued upon, the party sued is not estopped from setting up that the consideration of his covenant was fraudulent and void; that the doctrine of estoppel does not apply to the party who has been cheated and imposed upon. In this country, there has been a contrariety of decisions upon this point. A number of cases were cited, upon the argument, from the New York reports, in which the general doctrine is laid down, that at law, such fraud only as goes to the execution of a specialty or to its *illegality,* can be set up in avoidance. An examination of the cases will show, we think, that in some of them, there was a mere failure of consideration; in others, the fraud did not reach to the *substance* of the consideration, or to the essence of the contract, but only to some collateral matter. In *Belden et al.* v. *Davis et al.* 2 Hall, Sup. Ct. 447, Oakley, J., expressly negatives the idea that fraud, as such, can be pleaded as a substantial and independent defence at law, to defeat a sealed instrument; because, he says, that when such an instrument is executed understandingly, and with a full knowledge of its import, its

consideration cannot be impeached at law, except upon the ground of its *illegality*.

It is worthy of notice that no leading English authority is cited in aid of these decisions. They all rest upon, or at least refer to, the case of *Dorlan* v. *Sammis*, 2 J. R. 179 (n.), which was a writ of error from Queen's county, and in reference to which it has been said, the question of fraud did not arise ; and this view of that case is strengthened by the fact, that the court, in giving their opinion, remark, that no authority can be found where a bond has been set aside *at law*, unless the consideration was void, or *there had been fraud.* In *Stevens* v. *Judson*, 4 Wend. 473, Savage, C. J., unwillingly defers to these decisions, and places the opinion of the court upon no other ground than it has been so decided, and adds, that he can see no reason why. The technicality of these decisions, and their tendency to multiply actions, influenced, no doubt, the legislature of that state subsequently to enact, 2 R. S. 406, §§ 77, 78, that a seal should only be presumptive evidence of a consideration ; and opening a specialty to all the defences at law of a simple contract. In Pennsylvania, the question, whether fraud, going to the substance of the consideration of a sealed instrument, can be set up in bar at law, could not, until a recent period, well arise, as the subject of a distinct and independent adjudication ; because, under her system of jurisprudence, the courts exercised a mixed jurisdiction, and administered justice in each case as it arose, upon the blended principles of law and equity.

This point has also been considered in the Supreme Court of the United States. The views of that tribunal are entitled to great weight. In the case referred to, which was that of *Hartshorn et al.* v. *Day*, 19 How. 222, this question was not the material or leading question involved. Nelson, J., does say, that as a general rule, fraud in the consideration of a sealed instrument is not admissible at law to avoid the obligation ; but the reason he assigns is, the greater ease with which the rights and equities of all parties can be adjusted in a court of equity ; and he indirectly limits the application of this rule to those states where the two systems prevail, assuming that such states have adopted and acted upon it as a settled rule of practice. The case at bar is

also distinguishable from the case last referred to, in this, that in the latter case the contract had been, in part, executed.

It is unnecessary to review the decisions in Massachusetts upon this point, because it was admitted at the argument, that, by repeated adjudications in that state, it had been settled, that fraud and imposition in the consideration of a sealed contract might be set up as a competent defence at law. It was said, this rule had its origin there, in the fact that the courts of that state did not exercise chancery powers. But we think a better reason may be found in the fact, that those courts have adhered, from the first, to the common law principle, that fraud vitiates every contract, or, at least, that every such contract may be avoided, as well at law as in equity, and that, in cases of fraud, courts of law exercise concurrent jurisdiction with courts of equity. In the recent case of *Partridge et al.* v. *Messer*, 14 Gray, 182, where the question arose at law, whether a release procured by fraud might be avoided, the court state that such an agreement cannot be set up by the party who has committed the fraud, against the party who has been defrauded. To the same effect, is the case of *Wedlake* v. *Sargent*, 8 Eng. L. & Eq. 404, and of *Mallalieu* v. *Hodgsons*, 71 Eng. C. L. 689. In this last case, which was *indebitatus* assumpsit, the plea was, release, and the replication, that the release was obtained by fraud and covin. In *D'Aranda* v. *Houston*, 25 Eng. C. L. 316, which was debt upon a bond, the plea was, fraud, covin and misrepresentation in the consideration. In *Evans* v. *Edmonds*, 76 Eng. C. L. 777, the action was covenant; plea, that the defendant was induced to enter into the covenant by false and fraudulent misrepresentations; and in other cases that might be cited, we see this defence interposed without objection. It is true, that in *Mann* v. *Ditchbourn*, 1 M. & Rob. 460, and referred to in 80 Eng. C. L. 223, Lord Abinger refused to permit it to be made, but he expressly rests the decision upon his opinion of what the law should be, rather than of what the law is. The evidence having been rejected, the defendant moved for a new trial; and the court made the rule absolute, in order that the question might be distinctly raised, when it was held that the evidence was admissible.

Admitting that the cases may not all be reconciled, the result

of them, we think, is, that when a party to a scaled instrument actually executes it, and is competent to execute it, and is not deceived as to its actual contents, he cannot avoid it upon the plea of *non est factum*, because it is his deed ; and while also he is estopped at law, from showing a want of consideration, or a different consideration from that actually contained in the contract, or *fraud* even in any matter collateral to the consideration, yet while the obligation remains executory, and the defendant specially pleads that it was procured by the fraud, *covin* and misrepresentation of the plaintiff, setting forth wherein such fraud consists, and thus showing to the court that it reaches to the substance of the consideration, such a party is not, by any form of practice, or by any rules of technical law adopted or acted upon in this State, estopped from availing himself of such a defence.  This conclusion does not, of necessity, involve the decision that such an obligation is *void*.  However courts may, at different times, have been divided in opinion, upon the question, whether fraud, going not to the execution but to the consideration of a deed, renders it void or voidable only, they all agree in this, that as between the original parties, the party wronged may, either at law or in equity, set up the fraud, and may avoid it at his election.  In such cases, therefore, the distinction is rather formal and technical than substantial or real ; while in questions involving the rights of creditors and *bona fide* purchasers, the distinction becomes of primary and controlling importance.

Here, the question is not, whether equity has jurisdiction, but whether its jurisdiction is exclusive.  In many, perhaps in most cases of fraud, from the nature of its jurisdiction, the variety of its powers and remedies, as well as of the processes through which its remedies are enforced, a court of equity is the most fit instrumentality to adjust the conflicting rights and equities of all parties, meting out to each his own exact measure of equity; but it does not thenceforth follow, that when a party is sued at law upon an executory contract, and pleads to the action, that such contract is void, because of actual fraud in the very matter upon which his alleged promise rests, that he is estopped from so pleading, simply because the contract is under

seal. It will be noticed, that there is nothing inequitable in allowing this defence in the case at bar, since our refusal to enforce the payment of the two sums of fifteen hundred dollars and of five hundred dollars will clear the condition of the bond of the only stipulation which the pleas aver, and the demurrer to them admits, was procured by fraud.

The seventh replication to the third and fourth pleas is overruled, and the demurrer of the defendant sustained.