Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 . This is a writ of error to the judgment of the Circuit Court of1 the United States, holden by the district judge in and for the district of Rhode Island.
 

 The action was brought by Day against the defendants below, for an alleged infringement of a patent for the preparation and application of India-rubber to cloths, granted to E. M. Chaffee, August 31, 1836, and renewed for seven years from the 31st August, 1850. The plaintiff' claimed to be the as-signee of the patent from Chaffee. The defendants sought to protect themselves under a license derived from Charles Goodyear, whom they insisted was the owner, and not Day, of the renewed patent. Goodyear became the pwner of the unexpired term of the original patent on the 28th July, 1844, and on the same day granted to certain persons, called “The Shoe . Associates,” the exclusive use of all his improvements in the manufacture of India-rubber, patented, or to be patented,' during the term of any patents or renewals which he might own, or in which he might be interested, “ so far as the same are, or may be; applicable to the manufacture of boots and shoes.”
 

 The defendants claimed a license under the Shoe Associates.
 

 Chaffee, the original patentee, made application to the Com- ' missioner of Patents, the 22d May, 1850, for the renewal of his patent, in which he. states that the then present owners were willing and desirous that it should be renewed, and in
 
 *218
 
 that event that they ought to make him further compensation for the invention. And on the next’ day, 23d May, 1850, he entered into an agreement with Goodyear, .in which he stipulated to convey to. him the patent, on its renewal for the extended term, in consideration of three thousand dollars.
 

 There seems to have been some agreement or understanding that the then owners of the. patent, and their licensees, should he at the expense of the renewal.
 

 "William Judson had become interested in one-eighth of the patent in 1846, by an assignment from Goodyear; and in 1848 he, in conjunction with Seth P. Staples, was appointed by Goodyear his attorney and agent, in taking out, renewing, extending, and defending his patents; and a fund was provided by Goodyear for defraying the expenses of these proceedings, and placed in the hands of Judson. By the consent of Goodyear, Judson subsequently became his sole agent and trustee of the fund for the purposes mentioned.
 

 . The patent was renewed, in pursuance of the application, on the 30th August, 1850. Soon after this renewal, to wit, om the 5th September, 1850, an agreement was entered into between Chaffee and Judson, which recites the renewal, and that the expenses were large, and also that at the time of the renewal the patent was held by Goodyear for the benefit of himself and his licensees; and, further, that he had agreed with Chaffee, for himself, and those using the patent under him, that they would be at the expense of the extension, and make an allowance to-him, Chaffee, of $1,200 per annum, payable quarterly, during the period of the extension; and reciting also that Judson had had the management of the application for the renewal, and had paid, and' became liable to’ pay, the expenses thereof, and had agreed to guaranty the payment of the annuity of $1,200; and the agreement then provided as follows: “ÍTow, I (Chaffee) do hereby, in consideration of the premises,- and to place my patent so that in case of my death, or other accident or event, it may enure to’ the benefit of said Charles Goodyear, and those who hold a right to the use of said patent, under and in connection with his licensees, according to the understanding of the parties' interested, nominate, constitute, and appoint said William Judson my trustee and attorney, irrevocable, to hold said patent, and have the control thereof, so as no one shall have a license to use said patent or invention, or. the improvements secured thereby, other than those who had a right to use the same when said patent was extended,"without the written consent, of said Judson first had add obtained.”
 

 At the close of the agreement, Judson stipulates with Chaf-
 
 *219
 
 fee to pay all the expenses of the renewal, and also the annuity of $1,200; and also to be at all the expense of sustaining and defending the patent; and Chaffee reserves to himself the right to use the improvement in his own business.
 

 This contract was entered into without the privity of Goodyear, and changed materially the terms and conditions of that made by him- with Chaffee on the 23d May. He was at first dissatisfied with the change when it came to his notice, but afterwards acquiesced.
 

 The contract continued in operation down to the 12th November, 1851, when a modification of the same took place.
 

 This last contract recites that there was an omission in that of 6th September, in not stating that if the said licensees continued to use the improvements, they should pay their just proportion of the expenses and services in obtaining the renewal, which it was intended they should pay to Judson; and recites also that there was no stipulation on the part of Judson to pay Chaffee $1,500 per annum, as claimed by him; and it is then agreed that the licensees shall pay their share of the expenses to Judson, as a condition to the granting of a license by him to them; and that, on the payment of such share of the expenses, a license shall be granted to them. And it was further agreed, that Judson should pay Chaffee the $1,500 per annum; and also that Judson might use Chaffee’s name in the prosecution of infringements of the patent, or for any other purpose in relation to the use of it, he holding Chaffee harmless from all costs, &e., and he, Judson, to have all the benefits to be derived from said suits.
 

 It will be perceived that the only provision in this agreement differing from that of 6th September, in which Chaffee has any interest, is the one providing for an annuity of $1,500, instead of the $1,200. All the other provisions are for the benefit of Judson. This annuity was paid down to the 1st December, 1852, when some difficulty arose between Judson and Chaffee, and the payment ceased.
 

 And on the 1st July thereafter, Chaffee undertook, in consequence of this default, to revoke and annul the power and control of Judson over the patent, and to forbid his acting in any way or manner under the agreements of the 6th September, ana of the 12th November, above referred to. And on the same day, for the consideration of $11,000, assigned the renewed patent to Day, the plaintiff’ in this suit. Day, on the 2d July, 1853, gave notice to Judson of the assignment, offering to pay, at the same time, all sums there might be due him, if any there were, for moneys advanced in procuring the extension of the patent, or in any other way paid for Chaffee on
 
 *220
 
 ~ account of said patent. The aJove is t1~e substs~nce of the case, as appears from the written agreements of .the parties in the re~rd. The questions involved turn essentially upon the points: - - - -
 

 - 1. As to the operation and eltect to be given to the three agreements whi~h have been referred to, and especially of that of the 6th September, 1850, between Ohaffee. and Judson; and
 

 and 2. The force and etiect' of the attempted rescindmeiit of these agreements by Ohaffee, on the 1st July, 1853, on count of the negkct or refusal of Judson to pay the annuity of $1,500.
 

 ~ ~ • 1. It is not important to examine particularly the agreement between Goodyear and Ohaffee of 23d May,. as that was, in efl~ect, buperseded by the one entered into with Judson, the 6th of September, to which Goodj~ear afterwards assented.
 

 afterwards assented. It `is important only as leading to the latter agreement, and may therefore assist in explaining its provisions.
 

 its provisions. By this first, agreement, Ohaffee bound himself to assign to Goodyear the renewed patent, as soon as it was obtained, for the 4~onsideration of $3,000. Goodyear became thus equitably entitled to the entire interest in the patent during the extend- ed term,' and could have invested himself with the legal title on the paythent, or offer to pay the three thousand dollars, had. he not subsequently adquiesced in the modification of it `~rith Judson.' Jucison was the owner, jointly with Goodyear, of one.eighth of the patent. He was also the agent and attor- ney. of Goodyear, generally, in his applications for patents, in obtaining renewals, and in the litigation growing out of the business; and was the trustee of a fund provided by Goodyear to meet the expenses. It was, doubtless, on accouixt of this interest •f Judson in the improvement, and his general au- thority from Goodyear in the management of his patent con- c~rns, that led, him to enter into the new arrangement with `Ohaffee,. of the 6th September, -in the absence of his principal. `Goodyear might have repudiated it, and insisted upon the ful- ~fihnent of the first agreement. He thought fit, however, after a. full knowledge of the facts, to acquiesce; and his rights, `therefore, and those cWming under him, must dep~nd upon this second agreement. • `
 

 in respect to tins agreement, whether the title which passed from Chaffee, in the renewed patent to Judsqn, was `legal or equitable, the court is of opinion that the entire interest and ownership in the same passed to him for the benefit of Good- year, ~nd those holding rights and lic~nses under him. Th~ instrument is very inartificially diawn, but the
 
 *221
 
 object of it cannot be mistaken. Chaffee, in consideration of tbe premises, which included the annuity of $1,200, “and (in his own language) to place my (his) patent so that in case of death, or other accident or event, it (the patent) may enure to the benefit of said Charles Goodyear, and those who hold a right to the use of said patent, under and in connection with his licensees,” &c., nominates and appoints “said ‘William Judson, my trustee and attorney irrevocable, to hold said patent, and have the control thereof, so that no one shall have a license, &c., other than those who had a right to use the same when said patent was extended, without the written consent of said Judson;” and at the close of the agreemént, he reserves the right to -use the improvement in his own business. At this time, as we have seen,. Judson was the owner of one-eighth of the patent, and was the general agent and attorney of Goodyear in all his patent business transactions. It is apparent that the only interest in the patent, left in Chaffee, was the right reserved for his own personal use. TÍie annuity and indemnity against the expenses of the renewal were the compensation received by him for parting with the improvement. The. contract of the 12th November has no material bearing upon this part of the case. Most of the provisions were for the benefit of Judson, in relation to the licensees under Goodyear. The only provision important to Chaffee is the stipulation for the increased annuity of $1,500.
 

 2. Then, as to the attempted, rescindment of the contracts. The agreement of 6th September had been in force from its date down to the 1st July, 1853, a period of two years and nearly ten months. During all this time, the licensees of Goodyear, at the date of the renewal of the patent, and those whom Judson may have granted a license to since the renewal, had a right to use the improvement, and especially the Shoe Associates, referred to in their agreement with Goodyear, 1st July, 1848. Besides this stipulation with Goodyear, their right was expressly recognised by Chaffee himself, in the agreement with Judson- of 6th of September.
 

 The effect of the rescindment as claimed, and which would be necessary to enable the plaintiff to succeed in his action against the defendants, would be to break up the business of these licensees, by divesting them of their rights under this agreement — rights acquired under it from .all parties connected vsdth or concerned in the patent, and especially from Chaffee, the patentee, who placed it in the hands .of Judsph, for the benefit of Goodyear and those holding under him. The effect would also be to deprive Goodyear or Judson, or whichever of them had paid the expenses of obtaining the renewal, of the
 
 *222
 
 equivalent for- those expenses, except as they might have a personal remedy'against Chaffee. To the extent above stated, •the agreement of the 6th .September was already executed, and, in respect- to parties concerned, the abrogation would' work the most serious consequences.
 

 As we have already said* the ground upon which the right to put an end to the agreement is the refusal to pay the annuity of $1,500 after December, 1852. Judson proposed to Chaffee to resume the payment in June,. 1853, which'was declined; but we attach no importance to this fact, especially as we are' in a court-of law. But, in looking into the agreements of the 6th of September, and also the one of the 12th of November, the court is-Of opinion'that the payment of the annuity was not a condition to the vesting. of the interest in the patent in Judson,-and of course that.the omission or refusal to pay did' not give to Chaffee a right to rescind' the contract, nor have the effect to remit him to-his interest as patentee. The right to the annuity rested in covenant,, under the agreement of the . 12th of November. One of the-objects of that agreement was, to obtain from'Judson this covenant. . Erom the terms -and intent of the. agreement,' the remedy for'the breach could rest only upon the personal obligation of Judson, as, by the previous ojje of the 6th of September-, the interest in the patent had. passed to .Goodyear and his licensees, and no default .or act of Judson- coüld affeét them. . Chaffee chose to be satisfied with the covenant of Judson,-without stipulation or condition as it respected the other parties, and he must be content with it.
 

 The. cases of Brooks
 
 v.
 
 Stolly, (3 McLean, 526,) and Woodworth
 
 v.
 
 Weed, (1 Blatchford, 165,) have no application to this case;
 

 The attempt to rescind the contracts, being thus wholly inoperative and void, in the,¡opinion of the court, of course no interest in the patent passed, to Day* under the assignment of. the 1st July, 185; 3.
 

 ; •Evidence was given on the trial in the court below, for the purpose of proving that the agreement of the 6th of September was procured from Chaffee by the fraudulent representations .of-Judson, which was objected to, but admitted!
 
 j
 

 ■'
 
 The general rule is, that in an action upon a sealed-instrument in a court-of law, failure of consideration, or fraud in the consideration,, for the purpose of avoiding the obligation, is not admissible • as between parties and privies to' the" deed; ánd, more especially, where there has been a part execution of the contract.. The. difficulties are in adjusting, the rights and equities of the parties in a court of law; and hence, in the States where the two. systems of jurisprudence prevail, of
 
 *223
 
 equity and tlie common law, a court of law refuses to open the question of fraud in the consideration, *or in the transaction out of which the consideration arises, in a suit upon the sealed instrument, but turns the party .over to a court of equity, where the instrument can be set aside upon such terms as, under all the circumstances, may he equitable and just between the parties. A court of law can hold no middle course; the question is limited to the validity or invalidity of the deed.
 

 Fraud in the execution of the instrument has always been admitted in a court of iaw, as where it has béen misread, or some other fraud or imposition has been practised upon the 'party in procuring his signature and .seal. -The fraud in this aspect goes to' the question whether or not the instrument ever had any-legal existence. (2 J. R., 177; 13 Ib., 430; 5 Cow., 506; 4 Wend., 471; 6 Munf., 358; 2 Rand., 426; 10 S. and R., 25; 14 Ib., 208; 1 Alab., 100; 7 Misso., 424; 4 Dev. and Bat., 436; C. and H., Notes, part 2, p. 615, Note 306, ed. Gould & Banks, 1850.)
 

 It is said that fraud vitiates all contracts, and even records, which is doubtless true in a general sense. But it must.be reached in some regular and authoritative mode:; and this may depend upon the forum in which it is presented, and also upon the parties to the litigation. A record of judgment maybe avoided for fraud, but not between the parties or privies in á court of law. _ ';
 

 The case in hand illustrates the impropriety and-injustice of ádmitting evidence of fraud to defeat agreements of the character in question in a court of la,w.. We have a record before us of 1,055 closely-printed pages of evidence submitted to the jury, and a trial of the duration of some six weeks. Goodyear and his licensees had acquired vested and valuable rights under the agreements in this patent, and who .were in no way privy -to, or connected with, the alleged fraud, nor parties to this suit; and yet it is assumed, and without the assumption the fraud would be immaterial, that the effect of avoiding the agreements would be to abrogate those rights. They had been in the enjoyment of them for nearly three years, and may have, invested large amounts of capital in the confidence of their validity. They were derived from Chaffee himself, the patentee of the improvement. ■' A court of equity, on an application by him to set aside the agreements on the ground of fraud, would have required that these third parties in interest should have been made parties to the suit, and would háve protected their' rights, or secured them against loss, if it interfered at all, upon the commonest principles ■ of equity jurisprudence. . -
 

 
 *224
 
 Some slight evidence was given in the court below, upon the question whether the agreement of the 6th of September was sealed at the time of the execution. But the' instrument produced was sealed, and is recited in the subsequent agreement of the 12th November, as an agreement signed and sealed by the parties.
 

 A question was also made, as to the authority of the Shoe Associates to grant a' license to the defendants. But they held under Goodyear the right to the exclusive use of the improvement for the manufacture of boots and shoes. They were competent, therefore, to confer the right upon the defendants. Besides, the point is not material in the view the court have taken of the case, as upon that view no interest in the patent vested in the plaintiff under the assignment from Chaffee.
 

 It will he seen, by a reference to the bill of exceptions, that upon our conclusions in respect to several points raised in the case, the rulings in the court below were erroneous, and consequently the judgment must be reversed, and a venire de novo'awarded. .