# UNION PACIFIC RAILWAY COMPANY *v.* HARRIS.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 896.  Submitted April 15, 1895. — Decided May 20, 1895.

Writs of error to Circuit Courts of Appeals in actions for damages for negligence of railroad coporations are allowed when the corporations are chartered under the laws of the United States.

In an action against a railway company to recover for injuries caused by a collision with a car loaded with coal for a coal company which had escaped from the side track and run upon the main track, it is *held*, in view of the evidence, to be no error to charge that the railway company is bound to keep its track clear from obstructions, and to see that the cars which it uses on side tracks are secured in place, so that they will not come upon the track to overthrow any train that may come along.

When in such an action the defendant sets up a written release of all claims for damages signed by plaintiff, and the plaintiff, not denying its execution, sets up that it was signed by him in ignorance of its contents, at a time when he was under great suffering from his injuries, and in a state approaching to unconsciousness, caused by his injuries and by the use of morphine, the question is one for the jury, under proper instructions from the court; and in this case the instructions were proper.

THIS was an action brought in the Circuit Court of the United States for the District of Colorado by Robert E. Harris against the Union Pacific Railway Company to recover for personal injuries received by him while he was a passenger on defendant's train. Plaintiff recovered judgment in the Circuit Court and the defendant sued out a writ of error from the Circuit Court of Appeals for the Eighth Circuit, by which the judgment was affirmed. 63 Fed. Rep. 800. A writ of error from this court was allowed and the cause having been docketed, motions to dismiss or affirm were submitted.

*Mr. George G. Vest* for the motions.

*Mr. William Teller, Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson* opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The complaint alleged Harris to be " a citizen of the State of Colorado," and complained of " the Union Pacific Railway Company, defendant, which was heretofore and now is duly chartered and organized under and by virtue of the laws of the United States, and having its principal place of business in the city of Omaha and State of Nebraska, and is now and was at the time and times hereinafter stated, a citizen of the State of Nebraska." The motion to dismiss is made upon the ground that the judgment of the Circuit Court of Appeals was final, inasmuch as the jurisdiction was dependent upon the opposite parties being citizens of different States. As, however, the judgments of the Circuit Courts of Appeals are final in this class of cases only when the jurisdiction is dependent " entirely upon the opposite parties to the suit or controversy, being aliens and citizens of the United States or citizens of different States," plaintiff in error insists that this judgment was not final, since the jurisdiction depended not solely on diverse citizenship, but also upon the fact that plaintiff in error was a Federal corporation.

In *Northern Pacific Railroad Company* v. *Amato,* 144 U. S. 465, a suit was brought in the Supreme Court of New York against the railroad company to recover damages for personal injuries sustained by the plaintiff, and was removed by the defendant into the Circuit Court of the United States for the Southern District of New York on the ground that it arose under an act of Congress in that the defendant was a corporation created thereby, and a writ of error to the Circuit Court of Appeals for the Second Circuit was sustained. In that case the citizenship of the plaintiff was not mentioned in the complaint or in the petition for removal, and the petition stated that the action arose under an act of Congress. It was accordingly held that the judgment of the Circuit Court of Appeals was not made final by section 6 of the judiciary act of March 3, 1891, c. 517, 26 Stat. 826. In the present case jurisdiction was invoked on the ground of diverse citizenship, and it is said that that was the sole ground, and that the reference to the authority under which the corporation was chartered and organized was merely incidental, and, further,

that as the case did not involve the validity or construction of the charter of plaintiff in error, no Federal question arose. It is not for us to inquire why writs of error to Circuit Courts of Appeals in actions for damages for negligence of railroad corporations should be allowed simply because the corporations are chartered under the laws of the United States, in a statute whose object was to relieve an overburdened court, since such is the effect of the statute according to its plain language. Nevertheless, as plaintiff below appears to have really proceeded on the ground of diverse citizenship, we think there was color for the motion to dismiss although, as the other fact upon which jurisdiction could be predicated existed, we are obliged to overrule it. But this brings us to the motion to affirm, which, as we do not need further argument, we proceed to dispose of.

The complaint alleged that plaintiff on July 30, 1892, was a passenger for hire upon one of defendant's coaches in a train with a locomotive, being operated and conducted by defendant between the city of Georgetown and the city of Denver, defendant being by the terms of the contract of passage bound to deliver plaintiff safely at Denver, and having undertaken to carry and convey him in safety to that city, and to use due care and diligence thereabout; but that defendant, in disregard of its undertaking and promise and its duty in that behalf, carelessly and negligently ran one or more of its freight cars out on one of its sidings, known as Silver Age Mill siding, and negligently left the same insecure and unsafe, and in such a position and condition as to interfere with the passage of the train of cars, upon which plaintiff had passage, along the main line of defendant's track, so that when the train upon which plaintiff was a passenger came along it ran into this freight car and the injuries complained of were inflicted. This was supported by the evidence, from which it also appeared that the freight car in question was loaded for the Silver Age Mill Company with coal and was unloaded by that company's men.

The defendant in its answer denied all negligence, but admitted " that it had standing upon its side track, at about the

place mentioned in said complaint, one or more freight cars; but denies that the said freight cars were left insecure or unsafe, or in such a position as to interfere with the passage of the train of cars upon which this plaintiff was riding." The answer contained no allegation or suggestion that any other company had any control over the side track or the freight cars, or that any other company was in any manner responsible for the negligence which resulted in the collision.

The Circuit Court charged the jury that "there is no room for controversy, notwithstanding the fact that this car was delivered to the mining company filled with coal, and for the use of the mining company, and that it would seem from the evidence that after unloading the car, it was not sufficiently fastened in respect of the brakes; perhaps it was necessary to block the wheels also in such a place as that; but that whatever was necessary to keep it securely in place upon the side track was not done, and it moved down upon the track so as to overthrow the cars in the train which came down with the plaintiff. The act of negligence of the servants of the mining company is to be ascribed to the defendant. In other words, the railway company as to its passengers is bound to keep its track clear from obstructions of this kind; to see that the cars which it uses on side tracks are secured in place so that they will not come upon the track to overthrow any train that may come along; and there seems to be no question but that the car in which plaintiff was riding was overthrown by the freight car coming down from the switch or side track and on to the main track in collision with the cars of the train which carried the plaintiff."

To the giving of these instructions defendant excepted. But we agree with the Circuit Court of Appeals that on the evidence and under the pleadings there was no reversible error therein; and that this is so as to the motion at the conclusion of the evidence by defendant for an instruction that the defendant was not liable, and that the Silver Age Milling Company was, if there were a liability at all. Indeed, it is stated by the Circuit Court of Appeals that it was conceded on argument that defendant's negligence was sufficiently established.

The stress of the contention of the railroad company is thrown, however, upon another branch of the case. The complaint was filed November 26, 1892, and the answer January 11, 1893. On July 8, 1893, the defendant below filed a supplemental answer setting up a written release in bar of the action, executed four days after the accident, to which supplemental answer a replication was filed July 11, 1893, averring as ground of avoidance of such release that plaintiff's mind at the time of its execution was so enfeebled by opiates, shock, and pain that he was unable to enter into contractual relations; that the minds of the parties never met on the principal subject embraced in the release, namely, the damages for which the action was brought; and that the release was obtained through misrepresentation and fraud. The trial commenced July 14, and was concluded, by the rendition of the verdict, on July 17, 1893. Upon the issues joined, the validity of the release was a matter to be left to the jury. And although the bill of exceptions does not purport to contain all the evidence, it appears therefrom that there was evidence tending to sustain the replication. Certain exceptions were taken by plaintiff in error in relation to the admission of evidence over objection, and these were dismissed by the Circuit Court of Appeals with this observation : "A separate statement and consideration of these exceptions is not necessary as none of them is of any general importance. They have all been considered carefully, and we are satisfied none of them has any merit." We are of the same opinion, but will refer by way of illustration to two of the rulings complained of. One of the questions in the case was whether Harris was bound to have read the release at the time he signed it, and that involved considering whether he was able to do so. He was asked upon the trial whether he could read any part of the release without spectacles, it being contended that he did not have his spectacles at the time the claim agent of the railroad company interviewed him in his bed just after the accident. The witness testified that he could not read the fine print with spectacles nor the large print without; that his eyesight was not as good as it was when the release was presented to him; but that

at that time he could not have read a word of it without his glasses. Again he was asked: "Were you at the time of signing that conscious that you were signing any agreement other than for your expenses of sickness and loss of time for two weeks?" and he answered: "That is what he told me; that is just what he told me;" and that the release was not read to him by the claim agent. We do not think that any ruling in reference to this testimony can be held as substantially incorrect. The word "conscious" related to the understanding of the witness at the time, and the question and answer are to be taken with the other testimony and the instructions in the case; and we find nothing in these particulars calculated to mislead the jury or to be so prejudicial to the defendant as to justify complaint.

The railway company moved that the jury be instructed that upon the evidence the release was a complete bar to the action, which instruction the court declined to give and defendant excepted; but, as there was evidence tending to sustain plaintiff's contention in relation to the validity of the release, the instruction was properly refused. The court charged the jury in this regard in substance as follows: "A release of this kind is of the highest significance in general when it appears that the situation and circumstances of the parties show that it has been entered into with an understanding of the rights of the parties respectively, and with intent to include all matters of difference between them;" and "that when the parties are upon an equal footing, and there seems to be no reason to believe that any mistake has been made in respect to it, that neither party is at liberty to deny the force and effect of what it may contain; he is not at liberty to say that he did not read it or that he did not understand it;" but that "when it appears that either party is in a situation as to his health, physical condition, or as to the state of his mind that makes it probable that he acted without deliberation, without an understanding of the act with which he is charged, the instrument itself may be disregarded;" that in this instance, plaintiff having been injured July 30, and, while he was lying in bed apparently quite ill, "was approached by an agent of

the defendant company and was induced to sign the release, which has been put in evidence before you;" and upon that "it becomes a question in the first instance whether he was in a condition to know precisely what he was doing. He seems to have had in some degree and to some extent the possession of his faculties; he had used whiskey at the time of the accident or shortly afterwards, and morphine had been administered to him on several occasions. There is a question as to the effect of the accident, how far he was disabled by it, and as to the effect of the drug and of the whiskey, perhaps, on his mind; whether he was then in a condition to deal with such a subject as was presented to him. If he was not, and you can say that his faculties were in such a state that he could not comprehend what he was doing, and the force and effect of the paper which he signed, you may say he is not to be charged with it;" "and aside from that, if there was a misunderstanding of the facts, whether the facts were wilfully misstated by the agent of the railway company or not is not a very material question; but the question is whether the facts were understood by both parties;" that upon that the agent to the railroad company said "that he only spoke in a general way of making a settlement," and "his language was such as to comprehend all matters that were in difference between them, while plaintiff says that he was not asked to consider nor did he consider the question of the liability of the railroad company to him for the injury which he had received;" and "that in reckoning up what should be paid to him, they considered only the question in respect to his illness, his doctor's bill and the like, and the loss of time for two weeks;" and if the jury accepted "plaintiff's account of the negotiation between them as against that of the agent of the railway company, then it would appear that the plaintiff, at least, did not understand the subject-matter of the negotiation, and as to what is expressed in the release he says that he did not read it and could not read it without his spectacles, and that he did not have them at the time this paper was given to him."

The court further instructed the jury that "under some circumstances a man in full health and accustomed to the

transaction of business executing such a paper as that, would not be at liberty to deny his knowledge of its contents; but with one in the situation of plaintiff, lying on his bed and somewhat prostrated by the shock which occurred at the time of the accident, he may be excused from reading it if he did not in fact read it;" "he may be excused because he was in some pain, misery, and perhaps, to some extent under the influence of the morphine which he had taken;" and further that "if he understood what he was doing and understood that he was making a settlement of the whole business, the entire matter between himself and the railroad company, then he is bound by the settlement without regard to the amount of money which he received. . . . If the settlement was made with a full understanding of the rights of the parties, the plaintiff then being in a state of health to enable him to transact such business, and upon that you say that the settlement is binding upon the plaintiff, he is concluded of this action, and you need make no further inquiry in respect of it; that is to say, his action cannot be maintained." And the court further charged the jury that if they made an allowance to the plaintiff they should deduct from it what he had received.

To various parts of the charge defendant excepted, but we deem it unnecessary to go over these exceptions in detail, as the charge as a whole was in accordance with the great weight of authority upon the subject, and was correct upon the issues joined and the evidence thereon. *Chicago, Rock Island & Pac. Railway* v. *Lewis,* 109 Illinois, 120; *Bliss* v. *New York Central & Hudson River Railroad,* 160 Mass. 447; *Mullen* v. *Old Colony Railroad,* 127 Mass. 86; *Chicago, Rock Island & Pacific Railroad* v. *Doyle,* 18 Kansas, 58; *Lusted* v. *Chicago & Northwestern Railroad,* 71 Wisconsin, 391; *Dixon* v. *Brooklyn City & Newton Railroad,* 100 N. Y. 170; *Illinois Central Railroad* v. *Welch,* 52 Illinois, 183; *Mateer* v. *Missouri Pacific Railway,* 105 Missouri, 320; *Stone* v. *Chicago & West Mich. Railroad,* 66 Michigan, 76; *Smith* v. *Occidental & Oriental Steamship Co.,* 99 California, 462.

*Judgment affirmed.*