MAHR v. UNION PAC. R. CO.

(Circuit Court of Appeals, Ninth Circuit. May 17, 1909.)

No. 1,559.

Release (§ 24*)—Right to Contest Validity—Necessity of Restoring Consideration.

Where a plaintiff suing at law to recover damages seeks to avoid the effect of a settlement and release on the ground of his mental incapacity at the time the release was executed, conceding that he may raise such issue in an action at law, he must return or tender a return of the money received in settlement.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 45; Dec. Dig. § 24.*]

In Error to the Circuit Court of the United States for the Southern Division of the Eastern District of Washington.

See, also, 140 Fed. 921.

The plaintiff in error brought suit to recover damages for personal injuries which he alleged he sustained at Lookout in the state of Wyoming on September 28, 1904, while being carried as a passenger on a freight train belonging to the defendant in error.

It appears that the plaintiff was being carried by defendant in a freight car under an agreement to transport and carry various articles of household furniture and domestic animals, together with plaintiff, from Denver, Colo., to Walla Walla, Wash.; that on September 27, 1904, the car in which plaintiff and his property were being carried west was wrecked and the property damaged. The plaintiff and his property were thereupon transferred to another car, and on September 28th, when the freight train arrived at Lookout Station in the state of Wyoming, it entered upon a siding for the purpose of permitting the passage of an eastern-bound passenger train. While the freight train was on the siding the sliding door to the car in which plaintiff was being carried was open; after the passage of the east-bound passenger train the freight train started to move out and stopped for the closing of an open switch ahead. Plaintiff had gone to the open doorway of the car to speak to the conductor, and by reason of the sudden jar or jerk incident to the starting or stopping of the train the sliding door of the car closed and caught the plaintiff in the doorway, and he was injured about the head. He was taken to the Wyoming hospital at Rock Springs, arriving there on the evening of the day of the injury. On the 13th of October, 1904, he was discharged from the hospital, and he continued on his journey to the original point of destination near Walla Walla in the state of Washington.

The present suit was commenced on February 18, 1905. Defendant's answer was filed on September 20, 1905, in which it was alleged that on October

· For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

11, 1904, plaintiff's claim for the personal injuries alleged in the complaint had been compromised, settled, and paid for the sum of $50, and on the same day there had also been a settlement of plaintiff's claim for losses and damages to property and the payment of $50 on that account. Releases in accordance with the terms of settlement discharging the defendant from all liabilities therefor in each case were set up in the answer.·

On October 2, 1905, plaintiff filed his reply, in which he alleged with respect to each of the releases set out in the answer that the instrument, release, or agreement therein set out was signed and executed by plaintiff, if signed and executed at all by plaintiff, while plaintiff was in the hospital suffering from injuries described in plaintiff's complaint, and that plaintiff was at said time on account of said injuries mentally incompetent to understand the nature or effect of said instrument; that plaintiff's mental condition was such as rendered him incapable of understanding, and he did not understand, the nature, effect, or contents of such instrument. Plaintiff admitted that he had received the sum of $50 from the defendant on account of the personal injuries sustained by him as alleged in the complaint.

In an amended reply filed June 6, 1906, the plaintiff denied the allegation of the answer relating to the compromise and settlement of plaintiff's claim, except he admitted "on or about the 11th day of October, 1904, defendant paid to plaintiff the sum of fifty (50) dollars, but plaintiff denies each and every other allegation in said paragraph contained." In this amended reply plaintiff alleges that he had offered to return to the defendant the sum of $50 so received by him, together with interest thereon, and had tendered the same to Lester S. Wilson, one of the attorneys for the defendant, and that said Wilson, on behalf of the defendant, had refused and declined to receive the same, and plaintiff tendered the same in court.

Upon the trial the evidence on the part of the plaintiff tended to show that the injuries he received were about the head; there were several bruises and cuts above the right ear; a perforation of the drum of the left ear, and as a result of such injuries there was a paralysis of the nerves and muscles of the left side of the face; an injury to the jaw so that the teeth did not approximate; lips partially paralyzed; inability to close his left eye; and when the plaintiff was received at the hospital at Rock Springs on the day of the injury he was in a dazed condition. The plaintiff testified that he knew nothing after the injury, and knew nothing about the settlement or execution of the release.

The evidence on the part of the defendant tended to show that, while the plaintiff appeared a little dazed and confused the first few days after he was received at the hospital, that condition soon passed away, and there was nothing to draw attention to him in any way, but what he was rational and knew what he was doing. After the first three or four days he had a perfect and clear understanding of what he was doing, and took care of himself without watching; he could go as he pleased.

It was in evidence that James B. McCracken, a claim adjuster, representing the defendant visited the plaintiff on October 11, 1904, in the hospital at Rock Springs, and took plaintiff's statement concerning the accident of September 27th, when plaintiff's property was damaged, and the accident of September 28th, when plaintiff himself was injured. Plaintiff at that time stated in detail and estimated the damage to his property at $93, and stated the injury to himself. This statement was introduced in evidence. The claim adjuster testified that in the negotiations between the plaintiff and himself for a settlement he stated to plaintiff that he thought the accident was due to plaintiff's own fault, and that he was not authorized to pay plaintiff, anything, but,· if plaintiff had any proposition that he wished to submit to the railroad company, he would submit it—telegraph it to the company to see if the company would make a payment—and plaintiff said that he thought the company ought to pay him $50 even if it was his own fault, and even if the company was not liable for his injuries to cover his lost time and expenses. The claim adjuster told plaintiff that he would communicate with the company and would come to the hospital later in the day and would tell him what the answer of the company was on the subject; he told plaintiff that he thought that it was too high for the damage to his horses, and thought he had overdrawn the damage; he did not think they were damaged more than $50, and plaintiff expressed a·

willingness to accept $50 for the damage to his personal property; the damage to his personal property, and the damage the plaintiff was speaking of, was the accident that happened before the accident that caused plaintiff's injuries. After the conversation between the claim adjuster and plaintiff the former telegraphed to the company and received a message which authorized him to say to the plaintiff that the company would pay him $100, and authorized the adjuster to settle for the personal injury matter and issue to plaintiff a draft on the treasurer, which was done, and the $50 for the other matter would come in later in a voucher from the freight department; that the $100 was to pay for both the injury and the damage, for the movables that were injured in the former accident, and the $50 for the personal injury of plaintiff that occurred later. After receiving the message from the company the claim adjuster went to the hospital and saw the plaintiff and told him the company would pay him the amount he had expressed a willingness to take—$50 for each of the accidents—and that he would give plaintiff that draft, and would prepare and make a voucher and release and order him a draft on the treasurer for the $50, and the freight matter would come in a separate voucher some time later, the claim adjuster did not handle the freight claim, and at that time the plaintiff executed a general form of release for his personal injuries, and was paid the $50 by draft and executed a voucher release.

The release was as follows:

"Received, Rock Springs, Wyo., Oct. 11 A. D. 1904, of Union Pacific Railroad Company, fifty no/100 dollars, in full payment of the above account.

"In consideration of the payment of said sum of money, I, Ernest Mahr, of College Place, in the county of Walla Walla and state of Washington, hereby remise, release, and forever discharge the said company, its operated, leased, controlled, and auxiliary lines and companies, of and from all manner of actions, cause of actions, suits, debts, and sums of money, dues, claims, and demands whatsoever, in law or equity, which I ever had or now have against said company or companies, by reason of any matter, cause or thing whatsoever, whether the same arose upon contract or upon tort from the beginning of the world to this day. In case the said sum of money is paid for or on account of any claim against any other company, or for or on account of any legal obligation or liability of any other company, or for or on account of sums of money, dues, claims and demands whatsoever in law or equity, which I ever had or now have against any such other company, I expressly admit and agree that said Union Pacific Railroad Company is fully authorized to make such payment for and on behalf of such other company, and to adjust and settle my claim against it, and I hereby remise, release and forever discharge the company for and on behalf of which the said sum of money is paid from all claims and demands whatsoever as hereinbefore more fully set forth.

"In testimony whereof, I have hereunto set my hand this 11th day of October, 1904.     Ernest Mahr.

"Witness:   J. Edwards, M. D.

"Note:—The receipt at the bottom of this voucher must be dated and signed by the payee, or by his authorized agent, and the signature must be witnessed. When signed by an agent, the authority for doing so must be attached to the voucher or filed with this company.

"Stamped signature or signature in pencil will not be accepted.

"Should there be any mistake in the voucher, it should be returned to the local treasurer for correction.

"B. McCracken.     Ernest Mahr."

The house surgeon at the hospital, Dr. Edwards, was present when this settlement was made, and was a witness to the release. He testified that plaintiff understood what he was signing when he signed the release.

At the conclusion of the evidence the defendant moved the court to instruct the jury to return a verdict for the defendant upon the grounds: First, that no negligence of the defendant had been shown with respect to the matters alleged in the complaint; second, that the plaintiff had been guilty of contributory negligence; third, that the evidence showed that if any liability rested on the defendant the same had been released; and, fourth, the evidence on the whole case entitled the defendant to a directed verdict. The court there-

upon directed the jury to return a verdict for the defendant, and a verdict was entered accordingly. The case comes to this court upon writ of error.

John H. McDonald and Otto B. Rupp, for plaintiff in error.

W. W. Cotton, Arthur C. Spencer, Lester S. Wilson, and Ralph E. Moody, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The suit involves plaintiff's claim of damages for personal injuries and the validity of the settlement and release of that claim. The claim for loss and damage to plaintiff's property and the settlement and release of that claim is not a subject of controversy. The objection to the release of the claim of damages for personal injuries is that there was evidence on the part of the plaintiff tending to show that the release was executed by the plaintiff at a time when by reason of his injuries his mental condition was such that he was incapable of understanding, and he did not understand, the nature, effect, or contents of the instrument.

With respect to the settlement, payment, and release of the claim, no charge of fraud, mistake, misrepresentation, trick, artifice, or deceit on the part of the defendant or any of its agents or employés was alleged or proven. There was no evidence that plaintiff had brought suit in equity to set aside the release, nor was there any evidence offered in support of the allegation of plaintiff's amended reply that he had offered to return the money he had received in settlement of his claim, or that he tendered the same in court.

In Hartshorn v. Day, 19 How. 211, 222, 15 L. Ed. 605, the Supreme Court said:

"Evidence was given on the trial in the court below for the purpose of proving that the agreement of the 6th of September was procured from Chaffee by the fraudulent representations of Judson, which was objected to, but admitted.

"The general rule is that, in an action upon a sealed instrument in a court of law, failure of consideration, or fraud in the consideration, for the purpose of avoiding the obligation, is not admissible as between parties and privies to the deed; and, more especially, where there has been a part execution of the contract. The difficulties are in adjusting the rights and equities of the parties in a court of law; and hence, in the states where the two systems of jurisprudence prevail, of equity and the common law, a court of law refuses to open the question of fraud in the consideration, or in the transaction out of which the consideration arises, in a suit upon the sealed instrument, but turns the party over to a court of equity, where the instrument can be set aside upon such terms as, under all the circumstances, may be equitable and just between the parties. A court of law can hold no middle course; the question is limited to the validity or invalidity of the deed.

"Fraud in the execution of the instrument has always been admitted in a court of law, as where it has been misread, or some other fraud or imposition has been practiced upon the party in procuring his signature and seal. The fraud in this aspect goes to the question whether or not the instrument ever had any legal existence.

"It is said that fraud vitiates all contracts, and even records, which is doubtless true in a general sense. But it must be reached in some regular and authoritative mode; and this may depend upon the forum in which it is presented, and also upon the parties to the litigation."

In George v. Tate, 102 U. S. 564, 570, 26 L. Ed. 232, the action was at law upon a bond. The defendants set up a defense that they

were induced to sign the bond by false and fraudulent representations. The Supreme Court said:

"Proof of fraudulent representations by Myers & Green, beyond the recitals in the bond, to induce its execution by the plaintiff in error, was properly rejected.

"It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give. Hartshorn v. Day, 19 How. 211, 15 L. Ed. 605; Osterhout v. Shoemaker and Others, 3 Hill (N. Y.) 513; Belden v. Davies, 2 Hall (N. Y.) 433; Franchot v. Leach, 5 Cow. (N. Y.) 506. The remedy is by a direct proceeding to avoid the instrument. Irving v. Humphrey, 1 Hopk. Ch. (N. Y.) 284."

In Union Pacific Railway Co. v. Harris, 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003, the action was brought by a passenger to recover damages from the railway company for injuries caused by a collision with a freight car which had escaped from the side track and run upon the main track, so that when the train upon which plaintiff was a passenger came along on the main track it ran into the freight car and the injuries complained of were inflicted. The defendant in its answer denied all negligence, and in a supplemental answer set up a written release in bar of the action, executed four days after the accident. To this supplemental answer a replication was filed averring, as ground of avoidance of such release, that plaintiff's mind at the time of its execution was so enfeebled by opiates, shock, and pain that he was unable to enter into contractual relations; that the minds of the parties never met on the principal subject embraced in the release, namely, the damages for which the action was brought; and that the release was obtained through misrepresentation and fraud. The defendant moved the court to instruct the jury that upon the evidence the release was a complete bar to the action, which instruction the court declined to give, and defendant excepted. With respect to this motion, the Supreme Court of the United States said:

"As there was evidence tending to sustain plaintiff's contention in relation to the validity of the release, the instruction was properly refused."

In Wagner v. National Ins. Co., 90 Fed. 395, 33 C. C. A. 121, Judge Taft, speaking for the Circuit Court of Appeals for the Sixth Circuit, refers to this case as approving the practice that a release can be avoided in a suit at law by replication, in which plaintiff sets up fraud in the procurement of the release. Judge Taft makes the further observation "that probably, on the evidence brought out in that case, a replication of non est factum might have been supported." But the feature of that case to be noticed here is that plaintiff had set up in his replication that the release had been obtained through misrepresentation and fraud, and there was evidence tending to sustain the replication.

In the present case there was no such issue, and no evidence tending to support such an issue, but plaintiff's amended reply was in the nature of a plea of non est factum, possibly because of Judge Taft's observation in the Wagner Case, and this plea was set up for the obvious purpose of avoiding a suit in equity to set aside the release.

Assuming that it had that effect, notwithstanding the absence of mistake, misrepresentation, or fraud, did it also have the effect of relieving the plaintiff of the necessity of repaying or tendering to the defendant the money received in the supposed settlement, and for which the release was executed?

In the Harris Case the trial court charged the jury that if they made any allowance to the plaintiff they should deduct from it what he had received. It is contended by the plaintiff in error that this instruction, which was approved by the affirmance of the judgment in the Supreme Court, is authority for the plaintiff's right to maintain this action without returning or tendering the return of the money he re-ceived in settlement of his claim. But it appears from the Harris Case in the Circuit Court of Appeals as reported in 63 Fed. 800, 12 C. C. A. 598, and in the Supreme Court, 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003, and in a subsequent reference to the case in Texas Ry. Co. v. Dashiell, 198 U. S. 521, 529, 25 Sup. Ct. 737, 49 L. Ed. 1150, that the question of tender was not raised or considered in either of the appellate courts. In 158 U. S. 326, 330, 15 Sup. Ct. 843, 844, 39 L. Ed. 1003, the Chief Justice said, "Upon the issues joined the validity of the release was a matter to be left to the jury;" and on page 333, of 158 U. S., on page 845, of 15 Sup. Ct. (39 L. Ed. 1003), the Chief Justice said further:

"To various parts of the charge defendant excepted, but we deem it unnecessary to go over these exceptions in detail, as the charge as a whole was in accordance with the great weight of authority upon the subject, and was correct upon the issues joined and the evidence thereon."

In Texas & Pacific Ry. Co. v. Dashiell, 198 U. S. 521, 529, 25 Sup. Ct. 737, 740, 49 L. Ed. 1150, the court again refers to the Harris Case in the following language:

"A written release was set up in bar of an action for damages against the railway company. Several defenses were made to the release, among others, 'that the minds of the parties never met on the principal subject embraced in the release, namely, the damages for which the action was brought.' This defense was complicated in the instructions of the court with the defenses of fraud and mental incompetency to understand the terms and extent of the release, and it is difficult to make satisfactory extracts from the charge of the trial court. Enough, however, appears to show that the court submitted to the jury the fact of mistake of injuries received as bearing on the effect of the release, and this action was affirmed by this court."

It is clear from these references that all the Supreme Court decided in the Harris Case was that upon the issues joined (which did not include the question of tender) the evidence was sufficient to go to the jury.

In Hill v. Northern Pacific Railway Co., 113 Fed. 914, 51 C. C. A. 544, this court held that it was unnecessary in that case to decide whether the question of fraud leading up to and inducing the execution of a release might be inquired into and determined in an action at law in a federal court, for the reason that, conceding that it might be, good faith and fair dealing would require the plaintiff, as a condition precedent to the presentation and maintenance of such an issue, to return or offer to return the money received in consideration of the release.

In Price v. Connors, 146 Fed. 503, 77 C. C. A. 17, the action was for damages for personal injury sustained as a result of a gunshot wound. The defendants to the action set up as an affirmative defense in their answer that the plaintiff, for and in consideration of the sum of $500 paid to him by them, had released and discharged them from all liability for the alleged cause of action. In plaintiff's reply he alleged that if such a release was in existence it was obtained by the defendants collusively acting together for the purpose of cheating and defrauding the plaintiff out of his rights, and by taking advantage of plaintiff while he was intoxicated to such an extent as to be wholly unfit for the transaction of any business. In the trial court the jury was instructed, in effect, that, if a person who has been injured by the negligent act of another is fraudulently induced to sign a release for the damages sustained and accept a sum of money in settlement thereof, such release will not operate as a bar to the prosecution for damages to recover for such injury, and it would not be necessary that plaintiff should tender back the money so received or repay the sum to the defendant, but the jury should, in case they return a verdict for the plaintiff, deduct such sum from the damage assessed. This latter instruction was held to be error by this court, reaffirming the doctrine of Hill v. Northern Pacific Railway Co., supra. We see no reason why the plaintiff would not be held to the same rule in the present case. Indeed, plaintiff's amended reply appears to have been framed under the impression that such was the law, but, failing in proof, he now seeks to justify his action upon the authority of cases that have not been followed by this court.

There are numerous cases sustaining the rule that, where a person suing to recover damages seeks to ignore a previous settlement and release on the ground that the settlement was affected and the release obtained by mistake, imposition, or fraud, he must return or tender a return of the money received before he can maintain an action at law. The following recent cases are in point: Lyons v. Allen, 11 App. Cas. (D. C.) 543; Drohan v. L. S. & M. S. Ry. Co., 162 Mass. 435, 38 N. E. 1116; Gibson v. Western New York & P. R. Co., 164 Pa. 142, 30 Atl. 308, 44 Am. St. Rep. 586; Strodder v. Stone Mountain Granite Co., 94 Ga. 626, 19 S. E. 1022; Morris v. Great Northern Ry. Co., 67 Minn. 74, 69 N. W. 628; Och v. Mo., Kan. & Texas R. Co., 130 Mo. 27, 31 S. W. 962, 36 L. R. A. 442; Niederhauser v. Detroit Citizens' St. Ry. Co., 131 Mich. 550, 91 N. W. 1028; Highlands v. Cumberland Valley Farmers' Mut. Ins. Co., 203 Pa. 134, 52 Atl. 130; Louisville & N. R. Co. v. McElroy, 100 Ky. 153, 37 S. W. 844; Lomax v. Southwest Missouri Electric R. Co., 119 Mo. App. 192, 95 S. W. 945.

The judgment of the Circuit Court is affirmed.