AMERICAN SIGN CO. v. ELECTRO-LENS SIGN CO. et al.

(District Court, N. D. California, Second Division. November 3, 1913.)

No. 15,602.

1. ACTION (§ 24*)—ACTION AT LAW—EQUITABLE DEFENSES—FRAUD.

In an action in the federal courts on notes given for deferred payments on the purchase price of certain territorial rights or privileges under patents owned by plaintiff, defendant was entitled to plead, as a defense at law, failure of consideration based on fraud inducing the making of the contract, and was not required to sue in equity to obtain relief on such ground.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 153–155; Dec. Dig. § 24.*]

2. SET-OFF AND COUNTERCLAIM (§ 29*)—DAMAGES FOR FRAUD.

In an action on notes given for the purchase price of certain patent rights and privileges, a claim for damages for fraud inducing the making of the contract was relevant to and dependent on the transaction which was the basis of plaintiff's cause of action within Code Civ. Proc. Cal. § 442, and was therefore properly set up as a counterclaim.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.*]

Action by the American Sign Company against the Electro-Lens Sign Company, and others. On demurrer to defendant's defense and counterclaim and motion to strike. Motion denied, and demurrer overruled.

Willard P. Smith and Judson W. Reeves, both of San Francisco, Cal., for plaintiff.

W. W. Sanderson, of San Francisco, Cal., for defendants.

VAN FLEET, District Judge. [1] The action is to recover on promissory notes made by the defendant corporation and indorsed by its codefendants for deferred payments on the purchase price, under a contract of sale, of certain territorial rights or privileges under patents owned by the plaintiff; and the primary question presented by the demurrer and motion to strike interposed by plaintiff to the answer and cross-complaint is whether in an action at law in this court on a contract not under seal the defense of failure of consideration based on fraud inducing the making of the contract can be interposed, the contention of plaintiff being that such a defense has no competent place on the law side in a federal court, but is cognizable only in equity.

The substantive question has given rise to some difference of view and decision in the lower federal courts, arising largely, I think, out of an unwarranted extension in some cases of the principles announced in the case of George v. Tate, 102 U. S. 564, 26 L. Ed. 232, the leading case relied upon by plaintiff to sustain its contention. That case was an action to recover on a bond given to prevent the levy or execution of a writ of attachment, wherein the defendants answered that they were induced to enter into the bond by the false and fraudulent representations of the plaintiff's assignors. The trial court excluded evi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dence of the alleged fraud, and the Supreme Court in sustaining this ruling used this language:

"Proof of fraudulent representations by Myers & Green, beyond the recitals in the bond, to induce its execution by the plaintiff in error, was properly rejected.

"It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give. Hartshorn et al. v. Day, 19 How. 211 [15 L. Ed. 605]; Osterhout v. Shoemaker et al., 3 Hill (N. Y.) 513; Belden v. Davies, 2 N. Y. Super. Ct. 466; Franchot v. Leach, 5 Cow. (N. Y.) 506. The remedy is by a direct proceeding to avoid the instrument. Irving v. Humphrey, 1 Hopk. Ch. (N. Y.) 284."

The plaintiff construes this language as announcing the broad doctrine that fraud in procuring the making of a contract, regardless of whether it is one under seal or not, may never be availed of in a federal court to avoid its obligation, otherwise than by bill or other appropriate method on the equity side. And this is the view of that case adopted in Levi v. Mathews, 145 Fed. 152, 76 C. C. A. 122, cited by plaintiff, and some others of like character. These cases need not be particularly considered further than to say that, while some of them, like Levi v. Mathews, involved contracts under seal, and others contracts not under seal, they proceed alike upon the theory that the question as to the existence of any distinction in the nature of the contract in that regard is concluded by the language of George v. Tate, and are decided in obedience to what is conceived to be the rule there announced.

Is that case justly susceptible of the interpretation thus sought to be put upon it? With the greatest respect for the courts entertaining that view, I find myself wholly unable to give it my acquiescence. To my mind, it is based upon a misapprehension which overlooks the character of the case with which the court was dealing. It is a cardinal rule in construing the language of a decision that it must be read with particular reference to the facts before the court, and this principle, as it appears to me, must be wholly ignored to give the language of that case the sweeping effect contended for. The instrument there in suit was a bond under seal, a specialty, and it was with reference to the rights of the parties under such a contract that the court was speaking. When therefore, in announcing the applicable rule of law, the court employs the somewhat general and comprehensive expression, "It is well settled * * * *in these cases,"* etc. (italics ours), we are bound, not only in fairness but in obedience to the rules of construction, to confine the application of its language to the class of cases represented by the one before the court—cases involving sealed instruments. And that this class was what the court had in mind, and all it had in mind, is, I think, conclusively evidenced by the character of the cases referred to as authority for the rule announced. All the cases cited by the court involved contracts under seal: Hartshorn v. Day, an assignment of a patent under seal; Osterhout v. Shoemaker, a deed; Belden v. Davies, a release under seal; Franchot v. Leach, a formal contract for the sale of land; Irving v. Humphrey, a composi-

tion and release by creditors. And all of them confine the discussion of the rule in its application to that class of contracts. As thus, in Hartshorn v. Day:

> "The general rule is that, in an action upon a sealed instrument in a court of law, failure of consideration, or fraud in the consideration, for the purpose of avoiding the obligation, is not admissible as between the parties and privies to the deed," etc.

These considerations, it seems to me, show very clearly the proper limitations of the rule the court was declaring in George v. Tate, and that it had application alone to contracts under seal. And, thus construed, the case but announces a principle then old and familiar with reference to that class of contracts; whereas the construction contended for would commit the court to a doctrine not only at variance with that obtaining at common law, but with the rule prevailing in most, if not all, of the states of the union.

That courts of law have concurrent jurisdiction with courts of equity in matters of fraud in all instances where the relief sought is such that a court of law, with its more rigid remedies, is capable of affording it, has long been established; and that this principle has application to actions and proceedings in federal courts, notwithstanding the method of our procedure which requires the separate administration of legal and equitable remedies, has been recognized in repeated decisions of the Supreme Court. Thus in Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451, where the bill sought to set aside the written assignment of a contract alleged to have been obtained by fraudulent representations, and to restore the complainant to his original contract, the court dismissed the bill because the remedy at law was adequate, and said:

> "In cases of fraud or mistake, as under any other head of chancery jurisdiction, a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in an action sounding in tort or for money had and received. * * *
>
> "The present bill states a case for which an action of deceit could be maintained at law, and would afford full, adequate, and complete remedy. * * * If the plaintiffs should be ordered to be reinstated in all their rights under that agreement, and permitted now to tender performance thereof on their part, the only relief which they could have in this suit would be a decree for damages to be assessed by the same rules as in an action at law. * * * If the exchange of the contracts was procured by the fraud alleged, it would be no more binding upon the plaintiffs at law than in equity; and in an action of deceit the plaintiffs might treat the assignment of the contract with Mosty as void, and, upon delivering up that contract to the defendant, recover full damages for the nonperformance of the original agreement. * * * A judgment for pecuniary damages would adjust and determine all the rights of the parties, and is the only redress to which the plaintiffs, if they prove their allegations, are entitled."

So in Equitable Life Assur. Soc. v. Brown, 213 U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682, which was a bill brought by a policy holder against an insurance company for an accounting and the appointment of a receiver because of fraud and misfeasance of its officers, and in which the complainant contended that there was a relation of trust between the company and himself, the bill was held to sustain no ground

for equitable intervention because complainant's remedy, if he had one, was at law; and it is said:

"If it be held that there is no trust, then it follows that the suit cannot be maintained in equity on the sole ground of fraud. Such a ground for the maintenance of the suit (even if complainant could otherwise maintain it) is a mere incident to the main ground set forth in the bill. Equity does not now take jurisdiction in cases of fraud where the relief properly obtainable on that ground can be obtained in a court of law, and where, so far as necessary, discovery may be obtained as well as in equity. Rev. Stat. § 724 [U. S. Comp. St. 1901, p. 583]; United States v. Bitter Root Co., 200 U. S. 451 [26 Sup. Ct. 318, 50 L. Ed. 550], and cases cited."

In Union Pacific Ry. Co. v. Harris, 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003, the action was to recover damages for personal injuries, and the defendant set up a written release in bar of the action, to which a replication was filed averring, as ground of avoidance of the release, that plaintiff's mind at the time of its execution was enfeebled by opiates, shock, and pain to the extent that he was unable to enter into contractual relations; that the minds of the parties never met on the principal subject embraced in the release; and that the release was obtained through misrepresentation and fraud. The defendant at the trial moved the court to instruct the jury that the release was a complete bar to the action, which instruction the court declined to give, but submitted to the jury the question of fraud in obtaining it, and its action in that regard was sustained; the Supreme Court saying:

"As there was evidence tending to sustain plaintiff's contention in relation to the validity of the release, the instruction was properly refused."

The same principles find ample support in the decisions of other federal courts.

In Wagner v. National Life Ins. Co., 90 Fed. 395, 33 C. C. A. 121, an action was brought on a policy of life insurance on which was an indorsement releasing the defendant from liability, and it was held that the plaintiff was entitled to show that the indorsement had been procured by fraud; Judge Taft, delivering the opinion of the Circuit Court of Appeals for the Sixth Circuit, saying:

"Except for the peculiar sanctity anciently attaching to a sealed writing at common law, which is now disappearing, it is difficult to see how there could be any doubt about the right in an action at law to avoid a release by a reply of fraud. The release or surrender is a contract (and in the case at bar not under seal), in which, for a valuable consideration, the releasor agrees to give up all claim and interest in his right of action. In the case of a contract of sale of personal property, a party may, by tendering back either the money or the property, as the case may be, rescind the sale for fraudulent misrepresentation as to any material fact inducing him to enter into the contract, and, if sued on the contract, may plead such rescission and justify it. Why may not one on the same ground and in the same way rescind a release, or, when it is produced against him as a bar to an action, avoid it by showing the fraud? * * *

"Our conclusion is therefore that it is proper in a suit at law for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution, or in misrepresentation as to material facts inducing execution. We are glad to come to this conclusion, because it avoids circuity of action, and thus facilitates the administration of justice. Of course, cases may be conceived where the avoiding of a release

may concern the rights of others not parties, or may involve the application of peculiarly equitable doctrines of confidential relations, and the like, and thus present issues which only a chancellor, with his flexible procedure and careful discrimination, can properly adjust and decide. In such cases the parties can be remitted to equity. But where the issue is simply one of fraudulent misrepresentation, it may be as well tried to a jury as to a court of equity, for fraud is an issue of which courts of law and equity, from time immemorial, have had concurrent jurisdiction. We find no reason therefore to modify the remark made by this court, speaking through Judge Lurton in Lumley v. Railroad Co., 43 U. S. App. 476, 489, and 76 Fed. 73 [22 C. C. A. 67], where he said: 'If the release had in fact been procured by fraud, he (the plaintiff) could have shown this at law, if the fact that the release was under seal had been out of the way.' The remark was perhaps not necessary to the case then before the court, but in this case, where the question calls for decision, we have no difficulty in confirming it."

In Second Natl. Bank v. Pan-American Bridge Co., 183 Fed. 391, 105 C. C. A. 611, an action at law on a building contract where the contract required the contractor to obtain the architect's acceptance of the building as a condition precedent to his right to final payment therefor, it was held that the contractor could show that the architect's certificate required as a condition precedent to action was fraudulently withheld, and was not required to go into a court of equity to avoid the effect of his failure to obtain it; and it is said:

"We cannot accede to the proposition that resort to equity is necessary in order to avoid the effect of failure to obtain the architect's certificate. The contention most strongly urged seems to be that the plaintiff must, as condition precedent to recovery on the contract, procure the setting aside of the contract provisions requiring such certificate, although the suggestion is also made that the architect's action needs reforming. Neither of those contentions is, in our opinion, maintainable. The plaintiff does not attack the validity of the contract provision requiring the architect's certificate as a condition precedent to recovery. Nor is there any certificate of the architect standing in the way and requiring reformation. The plaintiff's complaint in this respect is not that the contract is wrong, nor that any certificate of the architect is wrong. Its grievance is that the architect has improperly refused, as alleged, to accept the work and to certify accordingly."

And after discussing George v. Tate and other cases urged in support of defendant's contention, it is said:

"The right of a party to a building contract to show in an action at law thereon that the certificate required by the contract as a condition precedent to action was fraudulently withheld has been at least impliedly recognized in numerous cases, several of which are cited in another branch of this opinion, and has never, so far as we have seen, been denied."

In Such v. Bank of State of New York (C. C.) 127 Fed. 450, the plaintiff sought by his bill to have annulled and set aside a release given by him to the defendant in full settlement of all transactions with the bank, upon the ground that the making of the release had been procured by fraudulent misrepresentations. Judge Wallace held that the release, not being under seal, could be avoided at law in a federal court for the fraud inducing the making, and that the facts did not entitle the maker to resort to equity for its cancellation. After considering George v. Tate and Hartshorn v. Day, referred to in that case, he says:

"These are the only cases in which the question has been considered by the Supreme Court. Following these decisions, the rule obtains in this cir-

cuit that to avoid the effect of a release under seal by one who alleges that it was obtained by fraud relating to the consideration, and not merely to the execution of the instrument, resort must be had to a court of equity."

And proceeding to discuss a number of other cases upon the subject, including Buzard v. Houston, supra, Judge Wallace concludes:

"There is no more reason why the party who has executed an instrument like the receipt in the present case should be precluded in a court of law to show fraud in its consideration than there is where the maker of a promissory note, who asserts fraud in the consideration, should be precluded. In the absence of any decision by the Supreme Court or by this court that a party who by a false representation has been induced to make an unilateral agreement in the nature of a release, not under seal, cannot avoid it at law, the conclusion is reached that the complainant is not entitled to resort to equity to vacate the receipt given to the defendant."

The same principles are recognized by Judge Morrow in Mahr v. Union Pac. R. Co., 170 Fed. 699, 96 C. C. A. 19; and also in Lumley v. Wabash R. Co., 76 Fed. 66, 22 C. C. A. 60.

In Hill v. Northern Pac. Ry. Co., 113 Fed. 914, 51 C. C. A. 544, Judge Ross, while adverting to the question, determined that it did not arise upon the facts, and the court for that reason refrained from expressing any conclusion.

These considerations would seem to fully sustain the contention of the defendants that the issues tendered by their answer and cross-complaint constitute a competent answer in a court of law to the plaintiff's demand. Indeed, it is quite obvious, from the authorities referred to, that it would be idle and fruitless to send them to a court of equity with their grievance, since it could not there be entertained. They seek nothing but that which a court of law is fully competent to afford them—compensation by way of damages for the loss alleged to have been suffered through plaintiff's fraud.

[2] The further objections urged to the cross-complaint are without merit. The matter alleged is clearly relating to or depending upon the transaction counted upon by plaintiff within the meaning of the Code provision on counterclaim. C. C. P. § 442. The fact that the action is founded upon the notes rather than the original contract can make no difference in this regard. It is the same as if plaintiff were suing on the contract for a balance of purchase price not represented by notes. Nor do I think the cross-complaint improperly unites different and inconsistent causes of action.

The motion to strike will be denied, and the demurrer overruled.

Let an order be entered to that effect.