SECOND NAT. BANK OF CINCINNATI, OHIO, v. PAN-AMERICAN BRIDGE CO.

(Circuit Court of Appeals, Sixth Circuit. December 6, 1910.)

No. 2,045.

1. CONTRACTS (§ 292*)—ACTION ON BUILDING CONTRACT—FAILURE TO OBTAIN ARCHITECT'S CERTIFICATE—RIGHT TO SHOW FRAUD.

A contractor for the construction of a building may show in an action at law on the contract that the architect's certificate required by the contract as a condition precedent to action was fraudulently withheld, and is not required to go into a court of equity to avoid the effect of his failure to obtain it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1310, 1343; Dec. Dig. § 292.*]

2. CONTRACTS (§ 284*) — BUILDING CONTRACT — ARCHITECT'S CERTIFICATE AS CONDITION PRECEDENT TO RECOVERY.

Where a building contract required the contractor to obtain the architect's acceptance of the building as a condition precedent to his right to final payment therefor, he cannot maintain an action to recover such payment without such certificate in the absence of fraud on the part of the architect or of mistake so gross as to imply bad faith. It is not sufficient to show that it was withheld unreasonably and unfairly.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1292–1302, 1308–1317, 1326–1338, 1340–1351; Dec. Dig. § 284.*]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Action at law by the Pan-American Bridge Company against the Second National Bank of Cincinnati, Ohio. Judgment for plaintiff, and defendant brings error. Reversed.

Chas. M. Leslie, for plaintiff in error.

Orville K. Jones and Joseph W. O'Hara, for defendant in error.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. The defendant in error (plaintiff below, and hereafter called the plaintiff) recovered verdict and judgment against plaintiff in error (hereafter called the defendant) for $2,723.49, being the balance of the contract price for certain structural steel work furnished by plaintiff, under written contract with defendant, for the construction of the latter's bank building, together with the value of certain extras furnished. The questions presented on this review lie within a comparatively narrow compass. The facts material to their understanding are these:

The contract provides that plaintiff shall furnish and erect the work "agreeably to the drawings and plans prepared by" the architects for the owner, and that the work shall be performed "under the direction, and to the satisfaction of" the architects or the authorized representative of the owner; also that payments under the contract should be made "upon a certificate of the architect or other authorized representative of the owner," 15 per cent. being retained from the amount of each certificate and to be paid within 30 days after the final completion of the work "and the acceptance of the same by the architects of the owner, or its duly authorized agent." Payments were made from time to time by the defendant as the work progressed, aggregating full payment of the contract price except the sum of $2,062.89. Plaintiff furnished extras amounting to $660.60. It is for the sum of these two items that recovery was permitted. There is no dispute over the extras. The only dispute over the merits of the other item arises upon the claim of defendant that it should be allowed $2,370.84, as the expense of making certain changes in the work claimed to have been made necessary by plaintiff's failure to comply with the specifications in one respect only, which is this: The specifications provide that "the connection of beams and columns will be standard." They also provide that the contractor shall furnish to the architect, for his approval, triplicate copies of detail drawings, and that the work shall be executed "in strict accordance with such approved drawings," there being the further provision that:

"The architect, in approving these drawings, approves them in a general manner as being in or out of conformance with the general requirements of his drawings and specifications and does not relieve the contractor of responsibility for the correctness of the work shown by them."

The contractor made detail drawings of the connections of beams and columns, plainly showing 8 holes for each connection; that is to say, in splice-plates, angle irons, columns, and beams. These drawings were approved in writing by the architect. Construction in accordance therewith proceeded to at least the sixth story, without ob-

jection by the owner or the architect to the manner of these connections. Objection was then made that good workma ·hip and standard connection required 10 rivets instead of 8 for each connection. The record indicates that this objection was first made by the public building inspector. There is testimony tending to show that the architect, after construction had progressed to at least the height before stated, insisted that new 10-rivet connections be furnished in place of the 8-rivet connections. Upon plaintiff's refusal or failure to make the changes, they were made by defendant at a cost of $2,-370.84. The architect was satisfied with and accepted the material and workmanship furnished by plaintiff with the single exception of the connections in question. He refused to finally accept plaintiff's work as a performance of the contract and to give a certificate of such performance, basing his refusal upon the failure of plaintiff to make the proper connections or to allow defendant for the cost of the changes made therein. The plaintiff's work has not been accepted by defendant, or by any one on its behalf, as a complete performance of the contract, the defendant, however, being in the occupancy and use of the building. By its plea it offered to confess judgment for $352.69, as the difference between the plaintiff's claim and the amount paid by defendant for making the new connections.

Upon the trial there was a conflict of testimony as to whether 8-rivet connections were standard or whether 10-rivets were required. The defendant, both by objection to testimony and by motion for a directed verdict at the close of the testimony, insisted that plaintiff was precluded from recovery by the architect's refusal to accept performance of the contract and to give his certificate thereof, and that plaintiff could have relief against such refusal only in a court of equity. The court instructed the jury that if plaintiff's work and material conformed to the contract recovery could be had, notwithstanding the lack of acceptance or certificate by the architect, provided the jury should find that such certificate was withheld "unreasonably and unfairly" or (as expressed at another time) "capriciously or arbitrarily." An instruction requested by defendant at the close of the general charge that "it is not sufficient to show that the architect is unreasonable and unfair," was refused. No exception was taken to the charge of the court as given, exception being, however, reserved to the refusal to give the request just referred to as well as to the refusal to direct verdict for defendant.

In our opinion the exception to the refusal of defendant's request just mentioned sufficiently raises for review the correctness of the charge in the respect mentioned. Indeed, no question of such sufficiency is raised in plaintiff's brief.

We cannot accede to the proposition that resort to equity is necessary in order to avoid the effect of failure to obtain the architect's certificate. The contention most strongly urged seems to be that the plaintiff must, as condition precedent to recovery on the contract, procure the setting aside of the contract provisions requiring such certificate, although the suggestion is also made that the architect's action needs reforming. Neither of those contentions is, in our opinion, maintainable. The plaintiff does not attack the validity of the

contract provision requiring the architect's certificate as a condition precedent to recovery. Nor is there any certificate of the architect standing in the way and requiring reformation. The plaintiff's complaint in this respect is not that the contract is wrong, nor that any certificate of the architect is wrong. Its grievance is that the architect has improperly refused, as alleged, to accept the work and to certify accordingly. None of the cases cited by defendant's counsel are in point, for example: In Perry v. O'Neil & Co., 78 Ohio St. 200, 85 N. E. 41, the holding was that one who had given a voidable release for a cause of action could not maintain his action until the release is set aside. In George v. Tate, 102 U. S. 564, 26 L. Ed. 232, it was held that a defense that the bond sued on at law was obtained by fraud was available only "by a direct proceeding to avoid the instrument." In Beatty v. Wilson (C. C.) 161 Fed. 453, in accordance with the rule that only legal rights can be enforced at law in the federal courts, it was held that the holder of a state land certificate to whom no patent had been issued could not maintain ejectment against a subsequent purchaser from the state. In Cook v. Foley, 152 Fed. 41, 81 C. C. A. 237, one who had accepted and received payment upon a final engineer's estimate of measurements and classification was held not entitled to maintain suit at law for a further sum, based upon a claim that more favorable measurements and classification should have been made, until the estimate was avoided in a court of equity.

The right of a party to a building contract to show in an action at law thereon that the certificate required by the contract as a condition precedent to action was fraudulently withheld has been at least impliedly recognized in numerous cases, several of which are cited in another branch of this opinion, and has never, so far as we have seen, been denied. But in our opinion the trial judge erred in holding that the architect's certificate could be dispensed with if the jury were satisfied that it was "unreasonably and unfairly" withheld. It is true that this instruction finds apparent support in several decisions of state courts cited in plaintiff's brief. But the rule is well settled in the federal courts that under contract provisions such as those existing here the certificate of acceptance is a condition precedent to recovery upon the contract in the absence of fraud or of mistake so gross as to imply bad faith; in other words, that the withholding of the certificate must have been in bad faith.

Thus, in Kihlberg v. United States, 97 U. S. 402, 24 L. Ed. 1106, it was said:

"It is sufficient that the parties expressly agreed that distances should be ascertained and fixed by the chief quartermaster, and in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, his action in the premises is conclusive upon the appellant as well as upon the government."

In Sweeney v. United States, 109 U. S. 618, 620, 3 Sup. Ct. 344, (27 L. Ed. 1053), it was held that, as there was "neither fraud, nor such gross mistake as would necessarily imply bad faith, nor any failure to exercise an honest judgment on the part of the officer in making his inspections," the certificate was a condition precedent to pay-

ment.  In Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549, 551, 553, 5 Sup. Ct. 1035, 1037, 29 L. Ed. 255, a charge was requested that the engineer's final estimate was conclusive unless it appeared that he was guilty of "fraud or intentional misconduct." A modification by adding the words "or gross mistake" was held "well calculated to mislead the jury, for they were not informed that the mistake must have been so gross, or of such a nature, as necessarily implied bad faith upon the part of the engineer."  In Chicago & Santa Fé R. R. Co. v. Price, 138 U. S. 185, 195, 11 Sup. Ct. 290, 292, 34 L. Ed. 917, it was held that the engineer's certificate was conclusive in the absence of fraud or of such gross error "as to imply bad faith."  In United States v. Gleason, 175 U. S. 588, 602, 607–608, 20 Sup. Ct. 228, 236, 44 L. Ed. 284, an averment that the refusal of the engineer to extend the time for the completion of the contract "was wrongful and unjust, and a breach of the contract" was held "wholly insufficient on which to base an attempt to upset the judgment of the engineer."

To the same effect are several decisions of this court.  In Mundy v. Louisville & N. R. Co., 67 Fed. 633, 637, 14 C. C. A. 583, 587, Judge Taft used this language:

"The authorities leave no doubt that construction contracts, in which the contractor stipulates that the engineer or architect of the owner shall finally and conclusively decide, as between him and the owner, what amount of work has been done, and its character, and the amount to be paid therefor under the contract, are legal, and should be enforced.  In such cases, after the work has been done, the contractor can recover nothing in excess of the amount found due by the engineer, unless he can make it appear that the engineer's decision was fraudulently made, or was founded on palpable mistake."

In Boyce v. United States Fidelity & Guaranty Co., 111 Fed. 138, 142, 49 C. C. A. 276, 280, Judge Severens used this language:

"And if the appointee, without fraud or manifest mistake, makes a determination upon any of the matters falling within the scope of the authority committed to him, the parties are bound by the decision."

In Memphis Trust Co. v. Brown-Ketchum Iron Works, 166 Fed. 398, 403, 93 C. C. A. 162, 167 (where many authorities upon the proposition we are considering are cited), it was said of an agreement in a building contract to submit differences to the arbitration of the architect that:

"An award made by virtue of such contract provision, in the absence of fraud or of such gross mistake as would imply bad faith or a failure to exercise honest judgment, is binding upon both parties thereto, so far as it is confined to disputes actually subsisting and open to arbitration."

See, also, American Bonding & Trust Co. v. Gibson County, 127 Fed. 671, 62 C. C. A. 397; s. c. 145 Fed. 871, 873, 76 C. C. A. 155; Choctaw & M. R. Co. v. Newton, 140 Fed. 225, 71 C. C. A. 655.

The jury could scarcely be expected to understand that the words "unreasonably and unfairly" meant "in bad faith," for the court charged that:

"If their (the plaintiffs') work and materials did conform to the plans and specifications made by the architect, then the refusal of the architects to ac-

cept such work and materials and to issue a certificate of acceptance is not fair and reasonable, and the plaintiffs may recover in excess of $352.69."

In other words, the actual conformity of the work and materials to the plans' and specifications was made the test of the bad faith which the law requires for setting aside the action of the architect. It is strongly insisted that the bad faith of the architect is clearly shown by his refusal to accept the plaintiff's work on account of defects apparent in the detail drawings approved by the architect. While the record was such as to justify submitting to the jury the question whether the architect acted in bad faith in refusing the certificate, and while it is possible that the defendant and the architect as well, in requiring the substituted connections, were influenced by a fear of criticism upon the sufficiency of the building, we cannot say, as a matter of law, that the admitted facts lead only to a conclusion of bad faith on the architect's part.

The error referred to requires a reversal of the judgment. The plaintiff should be permitted to make any amendment of its pleadings which may be necessary to meet the views we have expressed.

The conclusion we have reached makes it unnecessary to consider the propriety of the instruction that a "capricious and arbitrary" refusal to accept avoided the effect of the failure to obtain the certificate; and perhaps the record should not be construed as sufficiently raising that question. We content ourselves with the suggestion that, if the words referred to are to be used, it should be made clear that they involve either bad faith or a refusal or failure to exercise honest judgment.

Judgment reversed, and new trial ordered.