## A. R. YOUNG CONST. CO. v. ROAD IMPROVEMENT DIST. NO. 2, JOHNSON COUNTY, ARK., et al.

(Circuit Court of Appeals, Eighth Circuit. February 20, 1924. Rehearing Denied May 1, 1924.)

### No. 6205.

1. **Highways** ⬄113(4)—**Substantial failure to make payments as the work progressed under a contract for road construction held breach of the contract.**

    Under a contract for road construction, requiring the performance of labor and the furnishing of materials over a long period of time, and large expenditures, a provision for payments as the work progressed is material, and a substantial failure to meet such payments and an order to suspend work without payment of the amount then earned was a breach of the contract, which justified the contractor in declining to proceed with the work and terminating the contract.

2. **Highways** ⬄113(1)—**Right to cancel road contract in part held waived.**

    Under a contract with the commissioners of a road district for the construction of a road with macadamized surface, a provision reserving to the commissioners the right to annul the contract, other than for grading, culverts, and bridges, in case they failed to receive expected state and federal aid, *held* waived, where by a subsequent resolution they directed the contractor to proceed to put on the macadam wearing surface, which the contractor did.

3. **Highways** ⬄113(4)—**Measure of damages for breach of contract for road construction stated.**

    Where a contractor for road construction was justified in abandoning the work after part performance for breach of contract by the other party, he is entitled to recover as damages the expense necessarily incurred in preparing for further performance and such anticipated profits as he can establish by proper evidence, but not for payments to employees or expense incurred in retaining his machinery and organization after the abandonment in the expectation that the work might be resumed.

4. **Highways** ⬄113(4)—**Road contractor held entitled to payment for work approved and accepted by engineer.**

    The approval and acceptance of work of a road contractor by the engineer in charge, who by the contract is made the final arbiter of the work, can only be set aside for fraud, or such wanton or arbitrary disregard of rights as to be equivalent to fraud.

5. **Highways** ⬄113(4)—**Road contractor, whose work was stopped by breach of contract by the road district, held not liable for loss of profits by a subcontractor.**

    A road contractor, whose work was stopped by a breach of the contract by the road district, *held* not liable for loss of profits by a subcontractor, but the district *held* liable therefor. .

    Munger, District Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

---

⬄For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the A. R. Young Construction Company against Road Improvement District No. 2, Johnson County, Ark., and others. From the decree, complainant appeals. Reversed.

This is an appeal from a decree in an action by the appellant against the appellees road improvement district and commissioners, and an intervention by the appellees Edwards & Meegan. For convenience the appellant will be referred to herein as the plaintiff, the appellee road improvement district and commissioners as the defendants, and the appellees Edwards & Meegan as the interveners. The action was by the plaintiff against the defendants to recover retained percentages on a contract for constructing a road by the plaintiff, and damages for an alleged breach of contract by the defendants. The interveners, who were subcontractors of the plaintiff, claim from the plaintiff construction company and the defendant district $8,854.75 for work performed by them under their subcontract, the further sum of $5,250 for replacement work at the request of the defendant district, and $5,000 for loss of profits sustained by reason of the breach of the contract.

The allegations in the plaintiff's complaint are: That a contract was entered into between the plaintiff and the defendants for the construction of a road approximately 33½ miles in length, predicated upon the specifications and proposal attached thereto. That subsequently to the execution of said contract, and in order to perform the same, the plaintiff was required to make and did make large investments in road construction equipment, and in rock crusher equipment, and entered into contracts whereby it incurred large liability for necessary stone to be used upon said road, and the necessary power to operate the stone crusher equipment, and all other acts necessary to prosecute and fulfill its contract with the defendants. That it entered upon the performance of the contract, and continued under the direction of the defendants and their engineer, in accordance with the plans and specifications, proposals, and contract, until the 6th day of September, 1920, at which time it was ordered by the defendants to discontinue certain portions of the work, and to finish certain other portions as rapidly as possible. That after the receipt of said notice the work of the plaintiff was accordingly curtailed, and finally, on or about the 1st day of December, 1920, wholly discontinued for the following reasons: That on September 6, 1920, the board of commissioners passed a resolution instructing the engineer "to stop all grading at once, except such as may be necessary in his opinion to complete any work now open, or that may be required to best serve the interests of the district, and that a copy of this resolution be furnished to the engineer and to the contractor," a copy of which resolution was duly served upon the plaintiff, and the work of grading the said road stopped by the engineer representing the defendants; that on or about the 1st of December, 1920, the plaintiff ascertained that the available funds in the hands of the board of commissioners had been reduced to approximately $30,000, and that the defendants had exhausted their resources in their efforts to secure or provide additional funds; that at that time said defendants owed this plaintiff on retained percentages on work completed, for estimates approved, an amount approximately equal to the funds then on hand; and that by reason thereof plaintiff was required to and did wholly discontinue its operations. That at the time the work was discontinued the plaintiff held its equipment and employees ready and willing to proceed with the construction of said road, and so informed the defendants. Upon being assured by the defendants that they were in a position to secure, within a short time, funds available with which to meet and pay estimates for materials furnished and labor performed in accordance with their contracts, it held its equipment ready to perform the work, but, notwithstanding its action in that respect, defendants for a period of more than 90 days have been unable to make the necessary financial arrangements with which to meet the requirement of their contract, whereupon the plaintiff elected to discontinue work on said contract, to have it canceled, and for payment of such damages as it has sustained by reason of the inability of the defendants to perform their part of the contract. It claims for retained percentages $28,788.37, and as damages, salaries to employees, and rental value of the road equipment, etc., $10,297.95, and for loss of profits which it would have earned upon said con-

tract $71,404.80, and prays judgment for said sums of money, aggregating $110,491.12.

The defendants in their answer admitted the execution of the contract as set out in the complaint, but denied that the plaintiff performed the work contracted for in accordance with the plans, specifications, proposals, and contract, as alleged in the complaint, but that it failed to procure sufficient labor and machinery to comply with the terms of the contract. They admit that on September 6, 1920, they stopped the grading under the contract, except such as may be necessary in the opinion of their engineer to complete any work now open, or that may be required to best secure the interests of the district, and that thereupon all grading was temporarily suspended. It is then claimed that under the contract the defendants had a right to do so, when in their judgment it became necessary for the interests of the district; that the grading of the road at that time was far in advance of the surfacing, and by reason of rains and washouts was deteriorating; and that it was by the request of plaintiff, and with its express consent and approval, that the grading was stopped. They denied that the $30,000, as alleged in the complaint, represented their entire resources, or that they were unable to raise additional funds with which to make payments for the construction, as they had been authorized by the county, as authorized by the laws of the state, to reassess the land of the district; although the reassessment made was disapproved by that court on account of some errors, the court authorized them to make a new reassessment for the purpose of supplying funds with which to complete the road, which reassessment was then being made, and that in addition the Legislature of the state had authorized the county to collect a tax of $10 on each automobile in the county, which would result in obtaining approximately $20,000 annually, for the benefit of the county roads; that the district was not indebted to plaintiff in any sum which was immediately payable, and besides had loaned to plaintiff $20,000, which was still due from the plaintiff to it, with interest thereon. It is further alleged that the plaintiff is indebted to various parties, firms, and corporations for claims arising out of labor and material furnished and supplied in the construction of said highway, in the sum of approximately $20,000, all of which said sums are due and unpaid, and all of which creditors are entitled to liens against said road for the payment of their said claims.

It is further alleged: That, at the time the plaintiff abandoned this contract and ceased the work, the defendants had a promise from the state highway department of the state of Arkansas to the effect that funds would be supplied to them from allotments made for the purpose of meeting the pay rolls, and that the plaintiff had knowledge of this promise and condition. That there had been allotted to them government aid in the sum of $103,000; that they have drawn of this amount the sum of $17,500, and there is yet due them under their government allotment the sum of $85,500, which was available if plaintiff continued its contract, for the purpose of meeting pay rolls. That since the plaintiff abandoned the work, the defendants have received from the state highway department the sum of $10,000, which in addition to the $30,000 on hand leaves $40,000 in the treasury of the district available for the purpose of building said road. That in addition to this sum the defendants were entitled to receive of federal aid the sum of $20,000, making available a total sum of $60,000, which would carry the work of construction over a period of five months and for such period of time as would enable the defendants to procure by way of reassessment and sale of bonds all further sums necessary to fully complete said contract. There is a denial of all damages claimed by the plaintiff. The district also filed a counterclaim for a large sum of money; but as the court disallowed the entire claim and no appeal has been taken therefrom, it is not necessary to set it out herein.

A reply to defendants' answer and counterclaim was filed by the plaintiff, in which it denied that it failed to procure and supply for use sufficient and adequate machinery in the construction of the highway, and denies that the defendants had the right under the contract to stop the work, on any part of said road, when in their judgment it became necessary, and alleges that the provision of the contract authorizing the stoppage of work by the defendants was only in certain contingencies. The provision which is set out in the

reply will be set out hereafter when the terms of the proposal and contract are stated. It denies that the resolution of the defendants stopping the grading was adopted at the suggestion and request of the plaintiff and with its express consent and approval. It admits that the defendants did make efforts to raise the additional funds with which to pay for the construction of said highway, by making additional assessments upon the real estate included in the district, but denies that they were or are able to secure the funds from that source or any other source available to them, as they had no legal right to secure funds through an additional assessment. It then sets out a notice published by the commissioners of the defendants, in which they stated that "the statements of certain interested parties that the tax for the improvement district would be raised to a dollar an acre is false and circulated for the purpose of gaining votes in the present election," and further states "the law does not permit any raise in the assessment, and no one knows this better than those circulating this report." It is denied that the assessors had been ordered to make a reassessment for the purpose of supplying funds, and denies that the Legislature authorized a tax of $10 on each automobile, which will yield $20,000 a year, to be applied in the construction of the state roads. It claims to have repaid the $20,000 loan to the district, and denies that there had been allotted to the district government aid in the sum of $105,000, and that $87,500 thereof was still available as the work on said road progresses.

It is charged: That as early as April 5, 1920, the commissioners of the district knew that they did not have on hand sufficient funds to complete the construction of the road, and on that date adopted the following resolution:

"Resolved: That the board, being fully advised of the cost of construction and the financial condition of the district, do hereby direct the engineer from the district to have the road construction 14 feet wide and 8 inches thick before rolling, with the center 9 feet thereof constructed of asphalt macadam.

"And be it further resolved; That, should the present funds of the board be exhausted before the road is completed, the engineers for the district are further instructed to suspend construction until such time as additional funds are provided, in which case the time for completion of the contract shall be extended for a term equal to such suspension, and the district shall pay the premium of the contractor's bond during such suspension.

"And be it further resolved: That it is the understanding of the board that, in consideration of the contractor furnishing stone from the present quarry, which has to be shipped by rail, he shall be paid for all stone furnished, including screenings.

"And be it further resolved: That the secretary be instructed to request the state highway department to state definitely when the additional allotment of one hundred and fifteen thousand dollars ($115,000.00) promised by said department will be available, in order that this board may be governed accordingly.

"And be it further resolved: That the contractor shall not be responsible for maintenance of the road during such suspension, or such portion thereof upon which the grading shall have been completed and accepted by the engineer at the time of such suspension.

"And be it further resolved: That the secretary furnish the engineer and contractor of the district a copy of this resolution, and that this resolution be in effect when accepted by the contractor."

That on September 6, 1920, the commissioners of defendant district adopted and served on the plaintiff a resolution directing the stopping of all grading at once, except such as may be necessary to complete any work now open or necessary to conserve the interest of the district. That upon being served with a copy of said resolution it acknowledged such service and accepted the provisions of the resolution upon condition that the district provide for the payment of all estimates and of all retained percentages, not only for the stone furnished, but from all other sources at the time of the suspension of said work, or any part thereof, because of the lack of funds, and that all amounts due the plaintiff on retained percentages, and the December, 1920, estimates be paid at once, which was refused.

The interveners filed their intervention, setting out the subcontract entered into between them and the plaintiff for the clearing, grubbing, and grad-

ing necessary to build the road under plaintiff's contract with the defendants. This contract provides that the subcontractors were to perform all and singular said work according to the terms and specifications and under the directions of the engineer as set forth in the plaintiff's contract with the defendants, and then set out the prices to be paid by the plaintiff to the interveners for the work. In their intervention they claim that there is due them for the work actually done the sum of $8,854.76; that they did considerable replacement work at the request of the district, for which they claim there is due them, the sum of $5,250, and for loss of anticipated profits they claim $5,000 damages, and pray judgment for these sums against both the plaintiff and the defendants.

The answer of the plaintiff to this intervention admits the contract as claimed by the interveners, but alleges that they failed to complete the work within the time required by the contract. It admits that there is some money due the interveners, but it does not know the exact amount, and requires strict proof thereof. It denies that the sum of $5,250 is due for additional work done by interveners, but if it is due the work was performed at the request of the district, and it alone is liable therefor. It also denies that the interveners are entitled to any damages for anticipated profits, but, if there is a liability therefor, the defendants are liable therefor, and not this plaintiff.

The Southern Surety Company, which was made a party defendant, in the counterclaim of the defendants, as the surety of the plaintiff, was by the decree discharged from all liability, and, as no appeal is taken from that part of the decree, it need not be referred to in this opinion.

The defendants, in their answer to the petition of the interveners, after denying some allegations abandoned at the hearing, deny that interveners performed any work at their request and any indebtedness therefor, or that they are liable for loss of profits by reason of preventing them from completing their contract.

The learned trial judge made 29 special findings, and refused to make a number of special findings as requested on behalf of the plaintiff. It is not necessary to set out all these findings and refused requests, but only those findings and refused requests which are relied on by the plaintiff in the assignment of errors and are material to a determination of the issues involved.

A final decree was entered, awarding to the plaintiff $23,983.43 against the defendants, deducting therefrom $5,000 awarded to the district as damages for defective applications of asphalt by the plaintiff, leaving a decree in favor of the plaintiff for $18,983.43, with interest from the date of the institution of the suit. The court disallowed the claims of plaintiff for expenses incurred after it discontinued the work, on account of discontinuing the work, the claim for rental value of its machinery held on the work during said period, and anticipated profits for breach of the contract. The decree further provided that the interveners, Edwards & Meegan, recover from the plaintiff for grading, etc., $8,473, which is not questioned by the plaintiff, and $5,000 for the loss of profits in being prevented from carrying out the grading contract, which latter allowance is assigned as error; the plaintiff claiming if the interveners are entitled to these damages, the defendant district is liable therefor. The court also decreed that interveners are entitled to recover from the district the sum of $4,165.50, with interest, from which part of the decree the district did not appeal.

The findings of the court material to a determination of this cause are the following:

"10. The improvement district did not have sufficient funds to complete the work under the contract and depended upon securing federal and state aid.

"11. The contract provided that work could be suspended by the improvement district on failure to obtain federal and state aid. The improvement district was not able to obtain sufficient federal and state aid to complete the work.

"12. The inability on the part of the improvement district to obtain sufficient funds to complete the work under the contract was also sufficient ground for the construction company to stop work and terminate the contract."

"15. The improvement district had the right under the contract to annul any part of the contract other than that relating to grading, culverts and bridges. The construction company cannot recover for loss of profits on any part of the work which the improvement district could dispense with under the contract.

"16. The construction company consented to the suspension of the work on grading, and cannot, therefore, claim damages for loss of profits on that account.

"17. There were 5,000 cubic yards of solid rock excavated that were classified in the estimates as loose rock. The construction company is entitled to the difference between the amount allowed in the supplemental contract for solid rock, and the amount allowed in the original contract for loose rock, which amount is $1.40 per cubic yard. The amount, therefore, due the construction company on account of solid rock, is $7,000.

"18. The engineers for the improvement district deducted from the estimates certain amounts on account of crushed rock, which amounts were properly due the construction company and amount to $6,096.70.

"19. The construction company cannot recover any damages for any expenses incurred by it after it discontinued the work on account of payments by it to its employees.

"20. The statement of the account between the construction company and the improvement district is as follows:

| | |
|---|---:|
| Amount of percentages retained under the contract under estimate No. 23 | $35,156.35 |
| Amount due under that estimate | 2,419.20 |
| Amount due on account of solid rock | 7,000.00 |
| Amount due construction company on account of crushed rock | 6,096.70 |
| Overcharge on interest on advances | 81.00 |
| Making a total of | $50,753.25 |

"Against that amount the improvement district is entitled to the following credits:

| | |
|---|---:|
| Advances | $21,250.00 |
| Interest | 1,419.82 |
| Truck rental | 2,600.00 |
| Amount paid to Cazort Bros. | 1,500.00 |
| Making a total of | $26,769.82 |

"Applying those credits, there is a balance due the construction company of $23,983.43.

"21. The improvement district is not entitled to damages for imperfect bed for asphalt because its engineers approved the bed and allowed asphalt to be laid on it.

"22. The improvement district is entitled to a credit of $5,000 for defective laying of asphalt. That amount, deducted from the balance in favor of the construction company in finding 19, leaves $18,983.43 due the construction company, with interest thereon at the rate of 6 per cent. per annum from February 9, 1921, the date of the filing of the complaint of the construction company.

"23. Edwards & Meegan, interveners, entered into a contract with the construction company to do the clearing and grubbing, and earth, loose rock, and solid rock excavation.

"24 (as amended). Said interveners are entitled to judgment against the construction company for $8,473 for grading, clearing, and grubbing, and loose rock excavation.

"25. Said interveners are also entitled to judgment against the construction company for loss of profits in being prevented from carrying out the contract, amounting to $5,000.

"26 (as amended). Edwards & Meegan will be entitled to the sum of the two items $8,473 and $5,000, making a total of $13,473."

The requests for findings made by the plaintiff material on this appeal are the following:

"10. The supplemental agreement was executed by the construction company and improvement district and became part of the contract between them.

"11. At a regular meeting of the board of commissioners of the improvement district, held on the 21st, and adjourned session thereof on the 22d, day of April, 1919, a resolution was adopted by the board of commissioners of the improvement district as follows: 'Resolved, that the secretary of this board is hereby instructed to notify the A. R. Young Construction Company that the financial condition of this district is such that they (the board) will proceed to put on the macadam wearing surface as provided in the contract, and the said A. R. Young Construction Company is hereby notified that the board of commissioners have voted to have this portion of the work done, for said A. R. Young Construction Company to proceed with the necessary preparations and work of putting on this portion of the work as provided in the contract.' And that such resolution was duly served upon the contractor, and the contractor acted thereunder and in accordance therewith, and proceeded with the putting on of the macadam wearing surface. That by the adoption and acceptance of such resolution the improvement district became bound to complete the macadam wearing surface for the entire road project.

"12. The repudiation of the supplemental agreement by the improvement district was sufficient ground for the construction company to stop work and terminate the contract.

"13. The failure on the part of the improvement district to provide sufficient funds to complete all the work under the contract was also sufficient ground for the construction company to stop work and terminate the contract.

"14. The improvement district was in charge of all the work done by the contractor, and such work was done under its direction and the orders and direction of the engineers representing the improvement district, and the improvement district and its engineers approved the work done by the contractor as such work progressed.

"15. By the adoption and service on the contractor of the resolution of September 6, 1920, stopping the work of the grading, the improvement district thereby accepted all the work done on such grading and in connection therewith to that date.

"16. By the resolution adopted by the improvement district of May 3, 1920, ordering the contractor to move into the federal aid district of the road, the improvement district thereby accepted the portion of the road embraced within such resolution.

"17. The engineers for the improvement district approved the bed of the road and placed asphalt thereon."

"19. The engineers for the improvement district deducted from the estimates certain amounts on account of crushed rock, which amounts were properly due the construction company and amounted to $6,096.70.

"20. The statement of the account between the construction company and the improvement district is as follows:  ·

Amount of percentages retained under the contract, estimate

| | |
|---|---:|
| No. 23, | $35,156.35 |
| Amount due under that estimate, | 2,419.20 |
| Amount due on account of solid rock, | 7,000.00 |
| Amount due on account of crushed rock, | 6,096.70 |
| Overcharge on interest advances, | 81.00 |
| | $50,753.25 |

"Against the above amount the improvement district is entitled to the following credits:

| | |
|---|---:|
| Advances, | $21,250.00 |
| Interest, | 1,419.82 |
| Truck rental, | 2,600.00 |
| Paid Cazort Bros., | 1,500.00 |
| | $26,769.82 |

"Therefore on the foregoing items there is a balance due the construction company of $23,983.43.

"21. The refusal of the improvement district to pay the amount due under estimate No. 23 of $2,419.20 was sufficient ground for the construction company to stop work and cancel the contract.

"22. The repudiation of the supplemental agreement relating to solid rock excavation by the improvement district, and the failure of the improvement district to provide sufficient funds to complete the project, and the refusal of the improvement district to pay the amount due under estimate No. 23 of $2,419.20, entitles the construction company to recover for its loss of profits on the uncompleted portion of the road as shown by its evidence in the sum of $71,399.60, which amount is added to the above sum of $23,983.43, making the amount of the judgment in favor of the construction company in the sum of $95,383.03; and further the construction company is entitled to judgment against the improvement district for the rental value of its equipment and quarry used in connection with the building of the road, and for expenses incurred in connection therewith between the time of stopping work and the date of filing this action, as shown by its proof, in the sum of $10,113, making a total judgment against the improvement district of $105,496.03."

Ord Clingman, of Lawrence, Kan., and W. L. Curtis, of Ft. Smith, Ark., for appellant.

Webb Covington, of Ft. Smith, Ark., and G. O. Patterson, of Clarksville, Ark., for appellees.

Before KENYON, Circuit Judge, and TRIEBER and MUNGER, District Judges.

TRIEBER, District Judge (after stating the facts as above). The original contract between the district and the construction company, entered into on October 16, 1918, contained, among others, the following provision:

"That, for and in consideration of the payments to be made as hereinafter set forth, the contractor hereby agrees to furnish all tools, labor, equipment, and material required, and to build and construct the improved road in said road improvement district No. 2 of Johnson county, Ark.; in exact accordance with the plans and specifications, the originals of which are on file in the office of the state highway commission at Little Rock, Ark., copies of which are on file in the office of the secretary of the board, and the proposal filed with and accepted by the board on this 16th day of October, 1918, copy of said plans, specifications, and proposal being attached hereto and made a part hereof as fully as though copied in full herein, under the direct supervision and to the entire satisfaction of the state highway department, subject to the inspection, at all times, and the approval of the Secretary of Agriculture of the United States, and in accordance with the laws of the state of Arkansas, and the rules and regulations of said Secretary of Agriculture and pursuant to the Act of Congress approved July 11, 1916 (39 Stat. 355 [Comp. St. §§ 7477a–7477i]), entitled 'An act to provide that the United States shall aid states in the construction of rural post roads and for other purposes.'

"It is further agreed and understood between the parties hereto that the board expects to secure state and federal aid to the amount of not less than $150,000, to the end that the bituminous macadam may be constructed without cost to the owners of the real property within the district. In the event that the board should fail to secure state and federal aid to the amount of such $150,000, or fail to secure such funds from some other source than by assessment upon the real property in the district, then and in that event the board shall have the right at its option to cancel and annul so much of this contract as provides for the construction of any part of the proposed improvement, other than grading, culverts, and bridges. In such event the contractor shall not be entitled to any damages on account of such annul-

ment of the contract, but shall be paid in full for all work done prior to such annulment, and be discharged from further liability under this contract."

A supplemental contract was entered into, which provides:

### "Classification.

"In subhead 'Solid Rock' and in subhead 'Loose Rock' nine cubic feet shall be substituted for the expression 'one cubic yard,' and under the head 'Grading Classifications' graded will be divided into three classes, earth, loose rock, and solid rock, as set out on page E–2 of the specifications. In so much as there is no price stipulated for solid rock, if solid rock is encountered, it shall be paid for at $2.50 per cubic yard."

The specifications referred to as part of the contract contained the following provision:

### "Supervision and Decision of Engineer.

"The engineer shall have full supervision over the entire work, and his decision as to the quality of both material and construction, and the meaning of all drawings and specifications, shall be final and conclusive. All orders and instructions to the contractor shall be given by the engineer only."

On April 14, 1919, the board of commissioners of defendant district directed its engineer to request the contractor to put on additional grading force, and on April 22, 1919, it adopted the following resolution:

"Resolved: That the A. R. Young Construction Company be given until June 1, 1919, to put additional grading force on the work in order to complete the work within the time provided in the contract; and should said construction company fail to provide such additional grading force by June 1, 1919, then the board of commissioners will exercise its rights to proceed with the work as provided in the contract, in this respect."

Also the following resolution was presented by Joe Huddleston and unanimously adopted by the board:

"Resolved: That the secretary of this board is hereby instructed to notify the A. R. Young Construction Company that the financial condition of this district is such that they (the board) will proceed to put on the macadam wearing surface as provided in the contract, and the said A. R. Young Construction Company is hereby notified that the board of commissioners have voted to have this portion of the work done, and for said A. R. Young Construction Company to proceed with the necessary preparations and work of putting on this portion of the work as provided in the contract."

After a copy of this resolution had been served on the plaintiff, it proceeded with the work, and put on the macadam wearing surface. On April 5, 1920, the board of defendant district adopted another resolution hereinbefore set out, which was served on the plaintiff. On May 3, 1920, the following resolution was adopted by the Board:

"May 3, 1920. Resolved that the engineer for the district is hereby instructed, in compliance with the request of the federal engineer and inspector, to place concrete head walls on all drain pipe in the federal aid section. And, further, that for the amount of 12 and 18 inch pipe required to be placed by the federal engineer, the price of $1.50 per lineal foot for 12-inch, and $2.50 per foot for 18-inch, in place, be allowed the contractor."

The plaintiff in November, 1920, after having received a copy of the resolution of September 6, 1920, notified defendants that, as they had no moneys with which to pay plaintiff for the work as it pro-

gressed, and having failed to pay any estimates for work after October, 1920, it was willing to stop further work as requested by the defendants, on condition that they pay the plaintiff the moneys due on all estimates, all retained percentages, which under the contract were 15 per cent. of the sums due the plaintiff on the monthly estimates, and the December, 1920, estimate as soon as ascertained, the money then in the hands of the defendants having been reduced to a sum approximately equal to these amounts due the plaintiff, but that none of these payments were made by the defendants, and no payments whatever since October, 1920.

[1] The first question to be determined is, By whom was the contract breached? The original contract provided that:

"In the event that the board should fail to secure state and federal aid to the amount of such $150,000, or fail to secure such funds from some other source than by assessment upon the real property in the district, then and in that event the board shall have the right at its option to cancel and annul so much of this contract as provides for the construction of any part of the proposed improvement other than grading, culverts, and bridges. In such event the contractor shall not be entitled to any damages on account of such annulment of the contract, but shall be paid in full for all work done prior to such annulment, and be discharged from further liability under this contract."

It will be noticed that the reservation of the right of the defendants to cancel the contract, if they failed to secure $150,000 state and federal aid, excepted "the grading, culverts, and bridges." When they notified the plaintiff, by the resolution of April 5, 1919, "to proceed to put the macadam wearing surface as provided in the contract," which recited that "it (the board) is fully advised of the cost of construction and its financial condition," they waived the right of cancellation for failure to receive the state and federal aid therefor, and plaintiff had the right to proceed with the work and make all arrangements necessary to perform the work, such as providing for the machinery, contract for the necessary rock, and other material required for the construction of the road.

The order of September 6, 1920, to stop all work, except that mentioned in the resolution, was only agreed to by the plaintiff upon the conditions set forth in its November letter to the commissioners, which the defendants failed to comply with. The failure to make the payments due plaintiff as shown by the estimates of its engineer, and their inability to provide the funds for future payments for the work, the repudiation of the supplemental agreement, as found by the trial court, and the order of September 6, 1920, directing the stoppage of the construction by the plaintiff was a breach of the contract by the defendants. Anvil Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; Phillips, etc., Const. Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Guerini Stone Co. v. Carlin Constr. Co., 248 U. S. 334, 39 Sup. Ct. 102, 63 L. Ed. 275; U. S. Fidelity & Guaranty Co. v. Robt. Grace Constr. Co., 263 Fed. 283 (3d C. C. A.); Moore v. Security T. & L. Ins. Co., 168 Fed. 496, 93 C. C. A. 652; United Press Ass'n v. National Newspaper Ass'n, 237 Fed. 547, 150 C. C. A. 429. The last two cases were decided by this court. In the Guerini Stone Co. Case the court said:

"The Circuit Court of Appeals very properly held that in a building or construction contract like the one in question, calling for the performing of labor and furnishing of materials covering a long period of time and involving large expenditures, a stipulation for payments on account to be made from time to time during the progress of the work must be deemed so material that a substantial failure to pay would justify the contractor in declining to proceed."

[2] The fifteenth finding, that under the contract the defendants had the right to annul any part of the contract, other than that relating to grading, culverts, and bridges, is clearly wrong, for it disregards the resolution of the commissioners of April 22, 1919, before set out. We therefore conclude that the plaintiff is entitled to such damages as the law entitles it to.

[3] What these damages may be is well settled. They are loss of anticipated profits, if the contractor had been permitted to complete the contract, and also the outlay and necessary expense incurred by the contractor in preparing for performance of the work in accordance with the terms of the contract. A leading case on that subject is United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168. The court there said:

"As before stated, the primary measure of damages is the amount of the party's loss; and this loss, as we have seen, may consist of two heads or classes of damage—actual outlay and anticipated profits."

This has been uniformly followed by the courts. A late decision reaffirming it is Guerini Stone Co. v. Carlin Constr. Co., supra. The plaintiff is therefore entitled, in addition to the amounts awarded by the decree, to the anticipated profits, which it can establish by proper evidence, and the expenses necessarily incurred in preparing for performance of the contract, but not for payments made to its employees, or expenses incurred in retaining the machinery and organization after it had abandoned the contract. Nor is it entitled to any damages for the quarry.

[4] The finding of the court that the defendants are entitled to $5,000 damages against the plaintiff cannot be sustained. The specifications, which were made a part of the contract, provided that:

"The engineer [of defendants] shall have full supervision over the entire work, and his decision as to both material and construction * * * shall be final and conclusive."

The approval and acceptance of the construction, by the engineer in charge, who by the contract is made the final arbiter of the work, can only be set aside for fraud, or if guilty of such a wanton or arbitrary disregard of the contractor's rights as to be equivalent to fraud. Chicago, etc., R. R. v. Price, 138 U. S. 185, 195, 11 Sup. Ct. 290, 34 L. Ed. 917; Choctaw & Memphis R. Co. v. Newton, 140 Fed. 225, 233, 71 C. C. A. 655 (decided by this court); Second National Bank v. Pan-American Bridge Co., 183 Fed. 391, 395, 105 C. C. A. 611 (6th C. C. A.); Coal & Iron Ry. Co. v. Reherd, 204 Fed. 859, 879, 123 C. C. A. 155 (4th C. C. A.).

The evidence of the engineer, introduced as a witness by the defendants, establishes that the work was approved by him, and there is no claim on the part of the defendants that the engineer did not act honestly. From his evidence it appears that he was inexperienced in the

construction of such a road, but it was the defendants who employed him. He testified, after explaining how the asphalt should be applied:

"Q. You were on the job every day? A. No, sir.

"Q. How often were you on the job? A. Nearly every day.

"Q. And you observed the work as it was being done from day to day? A. Yes, sir.

"Q. Was there ever any of this asphalt section ordered taken up by you? A. Yes, sir.

"Q. And was it taken up? A. Near Clarksville there; yes, sir.

"Q. And was it redone by the contractor as you directed? A. Yes, sir.

"Q. Now, I believe you have testified, Mr. Levy, as to the cost of resurfacing this asphalt road with asphalt? A. Yes, sir.

"Q. I wish you would describe in your judgment just what has to be done down there in order to resurface this road. A. Just what do you mean on that, to bring it up to the specifications or resurface it?

"The Court: Resurface it, as you claim it should be resurfaced. A. On a course that which has an excess of asphalt, such as that section had at or near Knoxville, I should say, west of Knoxville, would require the addition of considerable stone screenings.

"Q. How much now? A. I don't know. I put in what I thought was enough, at one time to 150 yards was rolled in addition, and it did not start to take it up.

"Q. Well, it was done under your directions to the contractor? A. Yes, sir.

"Q. Did you ever ask him to come back and put more in afterwards? A. No, sir; I left about that time.

"Q. And you have never made any further request of the contractor to bring this up to what you thought it should be according to the plans and specifications? A. No, sir."

Mr. Mitchell, plaintiff's foreman of the construction, testified that all the work was done under the supervision of the defendants' engineer; that he required some of the work done over, which was done, and was satisfactory to the engineer and accepted by him. It was error to charge plaintiff with $5,000 for defective work.

[5] The court allowed interveners $5,000 for loss of anticipated profits. This finding is amply sustained by the evidence. But the court held that plaintiff is liable for this sum. In this we are of the opinion the court erred, as the contract was breached by the defendants, as hereinbefore found by us, and they should be held liable for this sum. It is true that the interveners did not complete the work within the time required by the terms of the contract, but that was waived by the plaintiff as well as the defendants, and the interveners permitted to proceed with the work without objections from either, after the expiration of the time limit. Nor did the commissioners, in the resolution of September 6, 1920, when they directed all the work, including the grading, to stop, put it on that ground. The delay was clearly waived.

The cause is reversed, with directions to refer the questions of damages the plaintiff is entitled to, to a master, to proceed in conformity with this opinion, and in all other respects the decree is to conform to the views expressed in the opinion.

MUNGER, District Judge (dissenting). The only appeal in this case is that taken by the A. R. Young Construction Company. The appellant alleged a number of grounds in the bill to justify its repudia-

tion of the contract early in November, 1920, and as grounds for asking the court for a cancellation of the contract. The decree is based on but two of these grounds; (1) That the district had repudiated a supplemental contract between it and appellant, which provided for the payment of an increased price for solid rock removed by appellant in preparing the roadway; (2) that the district did not have sufficient funds to complete the work contemplated by the contract. As these findings favored appellant, and found the contract to be existing until it was breached by the district, the only questions involved in this appeal relate to the damages to be awarded as a result of the district's repudiation of the contract, and as to the basis for estimation of these damages as between the appellant and the district, I concur in the conclusions announced in the foregoing opinion.

I cannot agree to the conclusion that the decree should be so modified that the allowance to the interveners of $5,000 against appellant as damages for loss of profits they sustained should be set aside, and the district should be held liable for that sum. In the first place, the interveners did not appeal, nor did the district, and a judgment should not be directed against the district in favor of the interveners in an appeal wherein the A. R. Young Construction Company, as appellant, complains only that the judgment should not be against itself. If the interveners desired to claim that the judgment should be against the district, as they prayed in their petition of intervention, they should have appealed from the disallowance of it against the district by the trial court, and, having failed to appeal, that disallowance is final. In the second place, the pleadings and evidence of the interveners furnished no basis for a judgment against the district. They did not allege nor prove any contract with the district, but did allege as the basis of their right of recovery a contract with the A. R. Young Construction Company, and the court so found. By this contract the only obligation to pay interveners for the work they did as subcontractors rested, not on the district, but on the A. R. Young Construction Company, the other party to that contract. There is an allegation that the district failed to pay the interveners for work they had done, but there is no attempt by pleading or proof to show that there was any obligation on the part of the district to pay them anything for the work done under their contract with the A. R. Young Construction Company. The interveners did not plead any rights as arising to them from the district's breach of the A. R. Young Construction Company's contract. The direction of a decree against the district for the interveners' loss of profits therefore cannot be sustained.

The only question presented by the appeal as to this item of damages in favor of the interveners is whether it was properly allowed against the appellant, the A. R. Young Construction Company. The appellant's contention is that its contract with the interveners contained a provision that the interveners were to complete their work in 12 months from the date of that contract (December 11, 1918), and, in case of the interveners' failure to perform their part of the contract, the appellant had the right to cancel and annul the agreement, and to finish the work to be done by the interveners; but they do not assert that any steps were taken to cancel the agreement for that reason.

Two days after the district commissioners adopted the resolution of September 6, 1920, directing the engineer to stop further grading work, the interveners ceased work, except some repair work done at the instance of the district upon portions of the grade already constructed. The interveners finally abandoned the contract, when in December, 1920, an estimate in their favor for more than $8,000 was not paid. This estimate, under their contract, was due from the A. R. Young Construction Company, the appellant, and evidently was due for work done before September 8, 1920. The right of cancellation of the interveners' contract was never exercised by appellant, and it breached its contract in a material obligation, when it failed to pay the interveners the estimate due them.

The decree in favor of the interveners should be affirmed.